THOMAS S. NEWTON, Complainant, Respondent,

*vs.*

HOLLIS HOLLEY, ET AL., Defendants, Appellants.

APPEAL FROM THE ROCK CIRCUIT COURT.

In order to the reformation of a contract on the ground of mistake, the mistake as well as the original intent of the parties must be shown by satisfactory evidence, and established beyond a reasonable doubt.

This cause was commenced by bill in chancery alleging a mistake in a deed from the defendants, Hollis Holley and Laura Jane Holley to the plaintiff, Thomas S. Newton, in omitting twenty-two feet of land off the west side of lot three, in block (22) twenty-two, in the village of Stoughton, in Dane county and state of Wisconsin; which deed purports to convey the north half of fractional lot 2 in fractional block 17, the south half of fractional lot 1 and 7½ feet in width off from the south end of the north half of fractional lot 1 in said block 17, and also lot 4 in said block 22, and bears date Nov. 17, 1853. The plaintiff claims that the 22 feet of land first mentioned was included in the same purchase, and ought to have been included in the foregoing deed. The plaintiff states in his said bill that said 22 feet was omitted, either through "*fraud or mistake.*" He says, "they either fraudulently and with intent to cheat and defraud this complainant, or by mistake omitted to insert in said deed said 22 feet off the west side of said lot three as aforesaid, according to the terms of said purchase, but whether the omission in said deed was purposely made to cheat and defraud this complainant, or through mistake and inadvertence, he is unable to state with certainty. Nevertheless, he has good reason to believe and does believe that it was not occasioned by mistake and inadvertence; but

on the contrary, was done for the purpose and with the intent to cheat and defraud this complainant." " And this complainant further showeth unto this court that he is the owner and in the use and occupation of the residue of said lot 3 in block 22, as well as of all the premises herein before described; that the same without the 22 feet in width aforesaid off of said lot 3 would be greatly injured in value, and their enjoyment hindered by reason of its locality with reference to the remaining portion of the purchased premises, and that without said 22 feet, great and irreparable injury would be done to this complainant." The complainant states that the entire premises described in the bill were enclosed, and that he occupied the same from the time of the purchase; and that defendant, on or about the 17th day of February, conveyed or pretended to convey to the defendant, Cyrus Roby, the said twenty-two feet of land; and also that said Roby had *actual notice* of his, complainant's title and claim. The bill also contains the general charge of confederation, &c., with the following prayer for relief, viz:

" And this complainant prays that the deed from said Hollis Holley and his wife, made, executed and delivered to this complainant, may be decreed to be corrected and the omission supplied; and that the title to the parcel of land omitted in said deed as aforesaid, do absolutely vest in this complainant; or that the said Hollis Holley may be compelled by the decree of this court to specifically perform the said agreement of purchase with this complainant. And that the conveyance of said Holley and his wife to said Roby be annulled, and that this complainant may have such further or such other relief as may be agreeable to equity."

The defendants, Holley and wife, positively deny that the said complainant purchased of the defendant, Hollis Holley, the twenty-two feet in dispute, as stated in the said complainant's bill of complaint. And further expressly deny that the said twenty-two feet in dispute was in any way or manner included or intended to be included in the purchase made by the said complainant of the said defendant, as said complainant

has stated in his bill of complaint, and deny that said defendant, Hollis Holley, ever sold said twenty-two feet of land to said complainant; and answering state that this same twenty-two feet of land claimed by the plaintiff was reserved from said sale, of which the complainant was then and there informed by the defendant, and well knew the fact, and well understood the same to be reserved ; and deny all statements in the bill charging fraud or mistake, and deny that the complainant ever believed what he states in relation to the pretended omission. The complainant's exclusive possession is denied, excepting and admitting that all of the premises purchased of defendants, and also all of said lot 3 was included in one common enclosure. And the statements in the bill in relation to the discovery of the omission, and in relation, to complainant's conversation with said defendant are expressly denied.

The defendants admit the sale to Roby, but expressly deny that they conveyed to Roby with the view or intention to "cozzen and defraud" said complainant, and also under oath deny that Roby had any knowledge or notice of complainant's pretended claim.

The separate answer of Cyrus Roby, the other defendant expressly denies that said complainant purchased of the said defendant, Holley, the twenty-two feet of land off of the west side of lot three, as claimed in and by said complainant's bill of complaint. And he expressly denies all knowledge or notice of the said complainant's pretended claim ; and positively denies that said twenty-two feet sold to him by the said defendants were in any way or manner included in said complainant's purchase, or that it was in any way or manner intended to be included. And it is expressly denied by all the defendants that the property purchased by the complainant is materially injured without the said twenty-two feet. The said defendant also denies that the complainant ever took possession of the twenty-two feet in dispute. Also denies that the complainant has any right, title or interest in or to the said land in dispute, or that said complainant has any right to ask such correction or any correction of said deed. Said defendant insists that he

is the legal, just and equitable owner of said twenty-two feet of land in dispute, by a good and valid purchase, made in good faith. And expressly denies all and every manner of confederation and unlawful combination whatever.

To which answers the complainant replied generally. On the hearing the complainant read in evidence a deed from the defendants, Holley and wife, to the complainant, Thomas T. Newton, dated November 17th, 1853, whereby the said defendants, for a consideration of $3,000, conveyed to the said complainant the north half of fractional lot two in fractional block seventeen, the south half of fractional lot one, and seven and a half feet in width off of the south end of the north half of fractional lot one, in said block seventeen, and also lot four in block twenty-two in the town of Stoughton, Dane county, which deed was recorded Dec. 4th, 1854, at 5 o'clock, P. M., in vol. 26 of deeds, on page 509.

Also a deed from the same grantors to the other defendant, Cyrus Roby, dated February 17th, 1855, whereby for a consideration of $150, the said Hollis Holley and wife convey to said defendant, Cyrus Roby, the west third part of lot three in block twenty-two in the town of Stoughton, Dane county, being twenty-two feet front on Main street, and back the depth of said lot, which deed was recorded February 20th, 1855, three o'clock, P. M., in vol. 27 of deeds, on page 563.

Also the deposition of Allen Mosher, as follows:

" Allen Mosher, being duly sworn, says : Am acquainted with the parties to this suit; was acquainted with them on or about the seventeenth day of November, 1853 ; knows of complainant purchasing property in the village of Stoughton about that time. 'Twas real estate ; heard Holley say he had sold his tavern property, that he had sold out ; did not say he had sold to any particular one ; 'twas at the time in November, 1853. Heard Holley and Newton talking about the trade in the house Holley then owned ; Newton came there ; he said to Holley, I wan't to buy all you've got, or I have come to buy you out ; said one way or the other, not positive which. Newton asked Holley his price. Holley said three thousand dollars. New-

ton said he'd like to go to keeping tavern. He conveyed the idea that he wanted to buy his tavern property; had reference to the tavern property then belonging to Holley here in Stoughton. Holley made a reserve of some household furniture; thinks it was one stove, some bedding, &c., amounting to what a small family would want to keep house with. Holley had only one tavern property in Stoughton at that time. This conversation I think took place in November, 1853; am not positive whether the trade was consummated on the day I heard these conversations or the next day, 'twas one or the other; thinks the writing was made out the next day."

Also the deposition of Frank Allen:

"Frank Allen sworn, says: know parties to this suit; have known Holley since Nov., 1853, and Newton since June, 1854. About the 10th day of July, 1854, I was in the bar-room of Newton's tavern, on lot No. 4 in block 22, in the village of Stoughton, and Newton asked me to go out and witness a demand he wished to make of Holley for a deed. He had a deed in his hand, filled out for the defendant, Hollis Holley and Laura Jane Holley to sign, containing the description of the west third of lot No. three in block No. twenty-two in the village of Stoughton. I went out of the door with Newton. Holley was in the street near the tavern on horseback. Newton requested him to sign and execute the deed he held in his hand. Holley refused to do so. Lots three and four in said block are platted four rods wide and eight rods deep, which was at that time the platted size of the lots in said village. There was on the first day of June, 1854, a fence running lengthwise of lot three, from the front of said lot about half through said lot, cutting off about twenty-two feet of said lot and leaving it directly connected with lot No. four. Said fence I think has remained there since that time. During the spring and summer of 1854, Newton occupied and cultivated the southern portion, to-wit: about two-thirds of said west third of lot three. I crossed the same frequently—did the summer of 1854. The balance of said west third of lot three was used by him as a yard. Newton claimed that Holley and Beardsley

had put their heads together to cheat him out of the premises in dispute. Holley said it was a —— lie. Newton told Holley if he did not execute the deed he would sue him. Holley said, " you may sue and be ——; if you commence a suit your house will come down." Holley had got off his horse and stood near the steps on the west side of the bar-room. He also stepped upon the steps; have heard Holley say several times that he was too smart for old Newton, since commencement of this suit, which was in reply to remarks made to Holley by others; knows Holley has sold premises in dispute and gave a deed of same to Cyrus Roby."

Cross-examined: "There has not to my knowledge been a fence running the whole length of the lots between lot three and four, but has been a fence running part way across lot three, cutting off about twenty-two feet of west side of said lot three. There is and has been a line fence between lots two and three of said block ever since I became acquainted with the premises. In some places at times the said line fence has been in a dilapidated condition. There is a fence and buildings forming a general enclosure around lots three and four, and there is no other fence enclosing the twenty-two feet in dispute with lot No. four, except the fence which I have stated as running about half way across said lot three, which does not connect with any other fence at the south end of either of said lots."

Question asked: Did Holley at time deed was presented to him deny having sold the lot to Newton? "He did." And further saith not.

Also of Butler Stowell, who testified: " Am acquainted with Thomas S. Newton and Hollis Holley; have been acquainted with them since the fall of 1853; have known Newton since he purchased the tavern property of Holley situated in the village of Stoughton, about the time (the day or the day after the sale). Holley told me he had sold out to Newton his property there, his tavern stand. Holley spoke to me about an offer Newton had made him for his tavern property in Stoughton before the sale to Newton. I staid over night at Holley's tavern the

night Holley made the sale to Newton.    He told me he had sold out to Newton, and further saith not.

Also the deposition of Henry Wandell, in substance, that he was acquainted with the parties, that he was present when an agreement between Holley and Newton was made for the sale of the premises referred to, situated in the village of Stoughton; that at that time Holley told Newton that if he sold him any his property he wanted to sell it all except what he wanted to reserve to keep house with, which was personal property. Newton was to give Holley $3000 for all the property, he, Holley, had in the village of Stoughton.    The sale included all Holley's real and personal property in Stoughton, except the few articles of personal property before referred to.    This agreement was made sometime in the month of November, 1853.    Newton said to Holley, that if he bought any, he wanted to buy all his property, and Holley said if he sold any, he wanted to sell all he had in Stoughton.    Witness understood both from Holley and Newton, that the former had sold to the latter all his property in Stoughton, except some household furniture; saw some money paid, but didn't know how much; the property was a tavern stand and lands, &c.    Witness was in the employ of Holley at the time, superintending the hotel which was part of the property sold.    Newton took possession next morning after the sale.

Also the deposition of James G. Conklin in substance as follows: That he knew something of an agreement between Holley and Newton in November, 1853, for the sale of Holley's property to Newton, and was present at the time it was made. "There was a talk between them about a sale of property. Holley agreed to let Newton have all his property in Stoughton, or all that I knew of his having, except some articles of household furniture which Holley reserved.    Holley said he would sell to Newton his property, consisting of a tavern stand in Stoughton, and also his personal property, excepting household furniture enough to keep house with.    Newton said he would take it, and it was considered a bargain between them.    They had been talking about it some time, and finally

made the trade. I don't know the number of feet of land embraced in the tavern stand, but the enclosure around the premises, extended up to Mr. Bigelow's fence on the east. I understood from Mr. Holley, that the land belonging to the tavern stand joined the lot where Mr. Bigelow then lived on the east. I don't know who owned the land where Bigelow lived. Holley then had all the land under cultivation from the house up to the east line fence between the tavern and where Bigelow then lived ; have heard Holley say that he had sold all of his property to Newton. Newton took possession in a day or two after the sale, and has been in possession ever since.

The defendants then made the following stipulation, and rested : "The defendants stipulate and admit, that since complainant purchased the tavern stand on lot four, of defendant Holley, he, complainant, purchased the east two-thirds of lot three on same block of Levi Hoffman, and that said complainant has used and occupied the said west one-third of said lot three in connection with said lot four and east two-thirds in dispute. But the said defendants insist that he did so without any right, license or permission so to do from either of said defendants or any other person having the right to permit him to do so."

And the defendant on his part, offered to read in evidence a mortgage, executed by Thomas S. Newton, complainant, to the defendant, Hollis Holley, bearing date November 17th, 1853, whereby in consideration of $      part of the purchase money for the same premises, mortgaged to the defendant, Hollis Holley, the north half of fractional lot two, in fractional block seventeen, the south half of fractional lot one, and seven and a half feet in width off the south end of the north half of fractional lot one, in said fractional block seventeen, and also lot four, in block twenty-two, in the village of Stoughton ; which mortgage was duly executed and delivered and is recorded in      of mortgages, on page

The said defendant next offered and read in evidence a deed from Levi Hoffman and wife to Newton, bearing date December 22d, 1853, whereby in the consideration of $384, the said

grantors conveyed to said complainant, Thomas S. Newton, the east two-thirds of lot three, in block twenty-two, in the town of Stoughton, which deed is recorded in vol. 26 of deeds, on page 511.

The said defendant also offered and read in evidence, a deed from Levi Hoffman and wife to the defendant, Hollis Holley, bearing date October 8th, 1851, whereby the said grantors conveyed to the said defendant, Hollis Holley, for a consideration of one dollar, the south half of fractional lot one, in block seventeen, in the town of Stoughton, which deed was then and there duly executed and delivered to the said defendant.

The said defendant also offered and read in evidence a deed from Amos Flyte to the defendant Hollis Holley, bearing date January 10th, 1853, whereby the said grantor, for a consideration of ten dollars, conveyed to the said defendant, Hollis Holley, seven and a half feet in width off from the south end of the north half of fractional lot one, in block seventeen, in the town of Stoughton.

The said defendant also offered and read in evidence a deed from Luke Stoughton, the wife of the defendant, Hollis Holley, whereby the said grantors, for a consideration of forty-five dollars, conveyed to the said defendant, Hollis Holley, fractional lot No. two, in fractional block seventeen, in the town of Stoughton.

The three deeds last above described, being the deeds referred to by Esquire Beardsley in his testimony, from which he was to obtain the description of the land which he was directed to copy into the deed from the defendant, Holley, to the complainant, to which was to be added lot four, in block twenty-two, the deed to which, Beardsley thinks was not before him at the time he made the deed; but he is confident that the deeds to all the other lands to be included in said deed with lot four, were brought to him at that time by the defendant Holley.

The defendant also offered and read in evidence the deposition or written testimony of E. Beardsley, Esq., as follows:

Elijah Beardsley, a witness sworn on the part of the defendant says: "Was called upon to make the writings in the sale of the property from Holley to Newton. I made out the deed here shown and marked "A." It was executed in my presence and acknowledged before me. Parties both met me in the street and told me they wanted me to go up to my office and make out some papers; went in the office and Holley brought in the deeds and wanted me to copy the same into a deed to Newton. Newton was with him; both came together; were both right at the counter; was nothing said by Newton. I went on and made a deed including all of that property from Holley to Newton. I was requested to copy into the deed to Newton all the property described in the deeds brought in by Holley. The deeds brought in were a deed for lot No. four (where the tavern stands) and a deed (or deeds) for the fractional lots where the barn stands; was no plat present. Holley instructed me to draw a deed of the premises, and Newton told me to draw a mortgage on the same premises to Holley, which I did. The instructions from both parties were to draw a deed of lot No. four and the fractional lots, subject to a mortgage held by Cook and Sherwin on the same premises. 'Twas in the evening when I drew the papers; they told me to bring the papers down to the house when they were made out, and I took them down and read them over to the parties twice. Some time after the sale Newton came into the store, and remarked—several months after, (four months or longer,) that Reuben Flyte had said to him that he was going to buy the twenty-two feet in dispute and put a black smith shop on it. Newton either said that he had bought it or that it was his land; think he said he had bought it, had his deed with him, and handed it to me and asked me if it was not in the deed. I looked the deed over and told him it was not; told him it included lot four, told him what lot four was; told him it included where the tavern stands. Newton made the inquiry of how a stranger would know but what lot four run clear up to the fence. Cook and Sherwin mortgage was given for about six hundred dollars, and was on the Hol-

ley tavern property; am sure that it was on lot No. four and am inclined to think it was on fractional lots; am positive it did not cover any other property except what was described in the deed to Newton. The same general enclosure that enclosed lot four, enclosed lot three, and I have no recollection of any alteration since the time of the sale from Holley to Newton."

*Cross-Examined.*—"Says, the part of fence spoken of is between the tavern on lot four and the house on lot three; tavern stands on the north-west corner of lot No. four, and the other house on or near the north-east corner of lot three. The fence mentioned, standing between the two houses, runs about half way across the lot; think fence was there at the time Newton purchased; has been no alteration of fence to my recollection; I should have probably noticed it if there had been any alterations; don't know which side of this fence the twenty-two feet front in dispute stands; parties came to me about sundown to get papers made, and they were completed, executed and delivered, between that time and nine o'clock, that evening. Don't recollect how many deeds Holley brought to me, from which I took the description of premises conveyed to Newton; there were two or more of them; was not a word said at that time between the parties as to any general or particular description of the premises to be deeded. Holley. paid me for making the deed and Newton paid me for making the mortgage; at same time he paid Holley what amount of money was coming to him at that time, and gave his note for the balance. I have no particular recollection of the particular matters in the case. I went strictly according to instructions in making that deed. Holley instructed me, and Newton stood by. I am positive that all the deeds for fractional lots were to be copied into the same deed with lot four. I was instructed to copy all of the descriptive part of the deeds, left with me by Holley, into the deed given by Holley to Newton, together with lot four. I have no recollection of telling Flyte that the premises in dispute were not deeded to Newton. I don't recollect whether Holley left a deed of lot four and the premises

in dispute or not; but do recollect that a deed of the fractional lots was left; heard Holley say he had sold out his tavern property in Stoughton, to Newton. The premises in dispute are fronting twenty-two feet off. the west side of lot three, of block twenty-two in the village of Stoughton; seems to be in Newton's possession. It is in his enclosure, the same enclosing lots four and three. Have never had any conversation with Holley about what he could prove by me; never advised Holley to sell premises in dispute. I made him a trifling offer for the same, after Newton came to me. 'Twas after the sale; don't recollect how much I offered him; 'twas between fifty and seventy dollars I offered him."

After the hearing, the circuit court pronounced and entered a decree, reforming and correcting the deed from Holley and wife to Newton, and annulling the deed of Holley and wife to Roby, as prayed for in the bill of complaint. From which decree the defendant appealed.

*By the Court*, COLE, J. After having carefully examined the testimony in this case, I am free to confess that it fails to satisfy my mind that a mistake was committed upon the sale of the property mentioned in the pleadings. At the same time it must be conceded that there is some testimony of the statements and admissions of the parties while negotiating the sale, which goes to show that Newton expected he was buying, and that Holley agreed to sell that part of lot three in controversy.

But it does seem to me that this testimony is too vague and unsatisfactory to authorize this court in saying that a mistake was made, and that this parcel was actually sold to Newton. Particularly is this evidence unsatisfactory, when we consider that none of the witnesses who testify about the mistake or fraud, were present when the sale was consummated, and the deed and mortgage drawn up, except the witness Beardsley, and he testifies upon the fact as follows:

" Parties both met me in the street and told me they wanted

me to go up to my office and make out some papers; went in the office and Holley brought in the deeds and wanted me to copy the same into a deed to Newton. Newton was with him; both came in together; were both right at the counter; was nothing said by Newton. I went on and made a deed including all of that property from Holley to Newton. I was requested to copy into the deed to Newton all the property described in the deeds brought in by Holley. The deeds brought in were a deed for lot No. four (where the tavern stands) and a deed (or deeds) for the fractional lots where the barn stands; was no plat present. Holley instructed me to draw a deed of the premises, and Newton told me to draw a mortgage on the same premises to Holley, which I did. The instructions from both parties were to draw a deed of lot No. four and the fractional lots, subject to a mortgage held by Cook and Sherwin, on the same premises. It was in the evening when I drew the papers; they told me to bring the papers down to the house when they were made out, and I took them down and read them over to the parties twice."

It is true the witness says on his cross-examination that he did not recollect whether Holley left a deed of lot four and the premises in dispute or not. But he does say that he went strictly according to instructions in making the deed. If this witness is to be believed, and there is nothing in the case going to impeach his testimony, then surely, to say the least, the proof is very doubtful and unsatisfactory about a mistake having been made. And I suppose in cases of this kind the writings between the parties must be taken to contain the real contract, and we must hold that the deed embraced the land intended to be conveyed until the contrary is established beyond reasonable doubt. For the rule is well settled that equity will withhold relief unless the mistake is made out in the most clear and decided manner, and to the entire satisfaction of the court. 1 Story Eq., J. Section 152; *Gillespie and Moon*, 2 J. C. R. 585; *Lyman vs. United States Ins. Co.*, Id. 630. It follows from the view which I have taken of this case that the judgment of the circuit court must be reversed and complainant's bill dismissed. SMITH, J. Dissenting.