## KENT vs. LASLEY and others.

*Evidence upon which a deed absolute on its face will be adjudged a mortgage.*

1. The evidence upon which a deed absolute on its face will be adjudged a mortgage, must be clear and convincing, such as courts of equity formerly required in such cases, and equal in force to that upon which a deed will be reformed.

2. Whether, after the death of the grantee, the unaided testimony of the grantor, however intelligent and credible, should be held sufficient in such a case, *quære*.

3. In this case, grantee being dead, and the only evidence being that of grantor, which was vacillating and contradictory, and unsupported by any strong corroborating circumstance, a judgment giving effect to the deed as an absolute conveyance, is affirmed.

APPEAL from the Circuit Court for *Winnebago* County.

Ejectment, etc. Defendants claimed title to the premises under two deeds from one George Cown, to their ancestor, William Lasley, dated June 12, 1849. Plaintiff claimed as purchaser at a sale made in 1865 upon foreclosure of a mortgage made to him by said Cown in 1859, and alleged, and asked the court to adjudge, that said deeds to William Lasley, though absolute upon their face, were in fact mortgages, and that the conditions which were, by agreement between the parties, to constitute a defeasance, had been performed. The following facts appeared from the evidence introduced by plaintiff: 1. That William Lasley lived, from 1848 to the time of his death, in 1853, in Ottawa county, Michigan. 2. That at his death, his widow and two other persons were duly appointed, etc., to administer upon his estate. 3. That the lands in question were not included in the inventories of the estate of said deceased, duly returned into the probate court of said Ottawa county. 4. That in June, 1856, Cown filed in the probate court of said Ottawa county, an affidavit which

stated that his deeds to Lasley were given to secure the latter for a liability he had incurred in signing notes with Cown, to the amount of $2,350, to Grant & Barton, of New York; that it was agreed between him and said Lasley, that the deeds were to become void, and the lands to be reconveyed, after payment of said sum of money by him to Grant & Barton; and that affiant had wholly paid said debt and wholly discharged Lasley and his estate from any liability therefor. 5. That, upon this affidavit, Cown applied to the probate court for an order empowering and directing the adminis-trators of Lasley's estate to execute to Cown a recon-veyance of said lands. 6. That, upon the hearing of this application, the administrators and administratrix appeared, and admitted the truth of the statements con-tained in said affidavit; and thereupon the probate judge made an order purporting to authorize them to reconvey said lands to Cown; and they accordingly executed to him a deed of release and quitclaim of the premises. Both the order and the deed recited the facts stated in said affidavit. The circuit court, against ob-jection, admitted this evidence, and also the testimony of George Cown, taken at the trial; the deposition of the same, previously taken in the cause, being also put in evidence by defendants. This testimony and deposition are long and confused, and will be omitted here; their general character and effect, as apprehended by this court, being sufficiently indicated in the opinion. The circuit court found that the deeds in question were intended as absolute conveyances, and rendered a judg-ment for the defendants; from which plaintiff appealed.

*Gabe Bouck*, for appellant, contended that the pro-bate court had jurisdiction, in settling the estate of Lasley, to determine whether his interest in the lands in question was merely that of a mortgagee, and, if so, to authorize a discharge of the mortgage upon proof of payment. He also contended that the other evidence

was sufficient clearly to establish the fact that the instru-- ment in question was merely a security to Lasley against a liability which had since been discharged.

*Moses Hooper*, for respondents, contended, among other things, that the testimony of one witness is not sufficient to show a deed to be a mortgage, citing 3 L. C. in Eq. 626; 21 Ala. 22; 2 Jones Eq. 172; *Arnold v. Mattison*, 3 Rich. Eq. 153.

DIXON, C. J. In considering the nature and sufficiency of the evidence required to convert a deed, absolute on its face, into a mortgage, we should never lose sight of the rules and practice of the court of equity at the time it was established by that court that parol evidence could be received for that purpose. The doctrine that a deed absolute in its terms can be thus transformed into a mortgage, and the title of the holder defeated, is purely an equitable, and not a legal, doctrine. It had its origin in the court of chancery, in which court alone the remedy could formerly be administered. The rules and practice of that court were such as to afford many safeguards to the rights of the grantee, and to obviate many evils which must otherwise have grown up out of the doctrine. The grantee was made a party defendant to the bill, and his answer thereto, under oath, had all the weight of the testimony of a single disinterested witness in the case, and even more. The denials of the answer upon the knowledge of the grantee must have been overborne by the testimony of one witness, with strong corroborating circumstances, or two positive witnesses; or they must have been so manifestly at variance with the facts and circumstances disclosed by the pleadings and evidence, as to leave no doubt in·the mind of the court. And the witnesses were not only required to be disinterested and credible, but their opportunities of knowing the facts about which they deposed, must have been ample. Where the subscribing witnesses to

the deed were alive, and their testimony could be obtained, that was preferred ; and the absence of such testimony was considered as affording a fair presumption that, if produced, it would militate against him whose case it would sustain or destroy.   The failure to examine the subscribing witnesses, or to satisfactorily account for their not being examined, cast a shade of suspicion over the cause of the complainant, and induced the court to regard with more jealousy, and examine with stricter scrutiny, the less convincing proof on which he relied. Not only the best evidence was required, but it must have been clear and convincing.   Such was the practice, and such the rules of evidence, which prevailed in courts of equity in causes of this nature. *Bryan v. Cowart*, 21 Ala. 92 ; *Cook v. Gudger*, 2 Jones' Eq. 172.   The same and no less convincing proofs were required, than are necessary to authorize the reformation of a written contract on the ground of mistake.   If the proofs are doubtful and unsatisfactory, and the mistake is not made entirely plain, equity will withhold relief, upon the ground that the written paper ought to be treated as a full and correct expression of the intent, until the contrary is established beyond reasonable controversy. 1 Story's Eq. Jur. § 152 ; *Newton v. Holley*, 6 Wis. 592 ; *Lake v. Meacham,* 13 id. 355 ; *Fowler v. Adams*, id. 458 ; *Harrison v. The Juneau Bank*, 17 id. 340.   Looking, therefore, to the practice and rules of evidence which always obtained in equity in causes like this, I cannot for a moment doubt that the proof here is altogether insufficient to overturn the deed, or disturb the title of the heirs of the grantee under it.   It consists of the testimony of the grantor alone, weak, vacillating, uncertain and contradictory, unsupported by any strong corroborating fact or circumstance, and given years after the transactions spoken of, and after the death of the grantee, and when the witness, always ignorant and uneducated, had become old and infirm, and his powers

of memory nearly destroyed by age and decrepitude. I very much question whether, in any case, after the death of the grantee, the unaided testimony of the grantor alone, however intelligent and credible he may be as a witness, should be held sufficient to set aside the deed, or invalidate the title claimed under it. It would certainly be a most dangerous precedent to establish. But be that as it may, I am very clear that the testimony here is wholly insufficient for such purpose, and that the judgment of the circuit court should, for that reason, be affirmed.

*By the Court.* — Judgment affirmed.