Smith vs. Allis, imp.

*April 22 — May 10, 1881.*

HUSBAND AND WIFE: *Defense by wife against their joint obligation, on the ground of undue influence, etc.*

Where a note and mortgage by husband and wife, and the certificate of acknowledgment of the mortgage by both, are perfectly fair and regular on their face, a defense against them by the wife on the ground that they were executed by her under undue influence and coërcion on the part of the husband, and that she never in fact acknowledged the mortgage, can be sustained only upon perfectly clear, convincing and satisfactory evidence; in general, the unsupported testimony of the wife alone, to contradict the certificate of acknowledgment, will not be regarded as sufficient; and in the present case this court regards the testimony of the wife (for which see the opinion) as insufficient, and reverses the judgment rendered in her favor.

APPEAL from the Circuit Court for *Monroe* County.

Foreclosure of a mortgage upon an undivided half of ten acres of agricultural land and five lots in the village of Sparta, executed in May, 1874, by the defendants W. W. Allis and *Lottie E. Allis*, his wife, to secure payment of their joint and several note for $1,700 with interest. W. W. Allis did not appear in the action. *Mrs. Allis* answered that her signature to the instrument was procured by fraud and undue influence; that her execution of the mortgage was without knowledge of

its real character, and was never attested or acknowledged; and that the village lots described in the mortgage were her separate property and homestead. The court found that said note and mortgage were given to secure an indebtedness due from Mr. Allis to the plaintiff, which indebtedness did not concern *Mrs. Allis* or her property or estate; that she executed the instruments as surety for her husband; that she received no consideration in fact therefor; that she signed said instruments by reason of coërcion and undue influence exercised over her by her husband, but that plaintiff did not make or participate in any misstatement or fraudulent representation made to her to obtain her signature; that she did not at any time acknowledge the mortgage; and that she did not subscribe it, or acknowledge her signature to it, in the presence of any witness. The court therefore held that the note and mortgage were void as to her, and rendered judgment accordingly in her favor; from which the plaintiff appealed.

For the appellant there was a brief by *Morrow & Masters*, his attorneys, with *S. U. Pinney*, of counsel, and oral argument by *Mr. Pinney:*

1. The facts testified to by *Mrs. Allis* are wholly insufficient to establish a defense on the ground of coërcion or undue influence. There was no duress; threats of personal injury do not constitute duress, nor do vague threats of some future evil. 2 Inst., 483; 1 Parsons on Con., 392–5; *Schultz v. Culbertson*, 46 Wis., 313; *Tapley v. Tapley*, 10 Minn., 460. There was no act of violence, and no menace or declaration such as should or naturally would make any material impression on a person of ordinary courage, regard being had to age, sex and mental and physical conditions. See *Eadie v. Slimmon*, 26 N. Y., 12. There was nothing to produce extreme terror, and no circumstances of extreme necessity or distress. 2 Story's Eq., § 239. Nor was there any undue influence. Kerr on Fraud and Mistake, 183; *Rexford v. Rexford*, 7 Lans., 6; *Watson v. Thurber*, 11 Mich., 457; *Gardiner v. Gardiner*, 34

N. Y., 155; *Hall v. Hall*, L. R., 1 Prob. &. Div., 481.   2. A conveyance or security, such as the plaintiff's, cannot be impeached except on the clearest and most satisfactory evidence. The uncorroborated testimony of a party is not sufficient. *Newton v. Holley*, 6 Wis., 592; *Fowler v. Adams*, 13 id., 458; *Lake v. Meacham*, id., 355; *Harrison v. Bank*, 17 id., 340; *Kent v. Lasley*, 24 id., 654; *McClellan v. Sanford*, 26 id., 595; *Wells v. Ogden*, 30 id., 637; *Harter v. Christoph*, 32 id., 245; *Sable v. Maloney*, 48 id., 333; *Lavassar v. Washburne*, 50 id., 200; *Atlantic Delaine Co. v. James*, 94 U. S., 207, 214.   3. A conveyance or contract obtained by duress, coërcion, fraud or undue influence is voidable for that cause, but not void. The appellant is an incumbrancer for value, without notice of the alleged fraud, coërcion or undue influence, and, as against him, such defense cannot be set up. *Rexford v. Rexford*, 7 Lans., 6; *White v. Graves*, 107 Mass., 328; *Green v. Scranage*, 19 Iowa, 465; *Moses v. Dade*, 58 Ala., 211; *Finnegan v. Finnegan*, 3 Tenn. Ch., 510; *Godfrey v. Thornton*, 46 Wis., 690.   4. The instrument having come to the hands of the appellant fair on its face and without notice of any improper practice, *Mrs. Allis* is estopped from insisting that it was not duly acknowledged. *Godfrey v. Thornton*, 46 Wis., 690; *Norton v. Nichols*, 35 Mich., 148; *Pringle v. Dunn*, 37 Wis., 449; *Heetor v. Glasgow*, 79 Pa. St., 79; *Singer Manuf. Co. v. Rook*, 84 id., 442; *Johnston v. Wallace*, 53 Miss., 331; *Baldwin v. Snowden*, 11 Ohio St., 203; *Kerr v. Russell*, 69 Ill., 666. The bare oath of the party in contradiction of the facts certified would certainly not be sufficient. *Johnson v. Van Velsor*, 43 Mich., 208; *Hourtienne v. Schnoor*, 33 id., 274.   5. The mortgage was valid and operative as between the parties, although not acknowledged or witnessed. Acknowledgment and witnessing are necessary only in order that the instrument may be recorded. *McPherson v. Featherstone*, 37 Wis., 632. By the married woman's act of 1850, *Mrs. Allis* had capacity to convey or mortgage in

the same manner as a *feme sole*.   *McKesson v. Stanton*, 50 Wis., 297.   And acknowledgment was never necessary to the validity of the deed of a *feme sole*.   Where a married woman acknowledged a deed or mortgage, she might do so in the same manner as a *feme sole*, whether her husband joined in it or not.   R. S. 1858, ch. 86, secs. 8, 12.   6. It being found that *Mrs. Allis* was the owner of the property in question, and that she executed the note and mortgage to secure a debt of her husband, it is immaterial whether the mortgage was executed in the manner and with the formalities essential to make it a legal charge on her lands.   Everything necessary to make the debt an equitable lien or charge on her separate estate is proved and found, and the court should have given the instrument that effect.   *Green v. Scranage*, 19 Iowa, 465; 1 Bishop on M. W., § 604; 2 id., § 370; *Dodge v. Silverthorn*, 12 Wis., 644; *Todd v. Lee*, 15 id., 365; *Armstrong v. Ross*, 5 C. E. Green, 109; *Wilson v. Brown*, 2 Beas., 277; *Harrison v. Stewart*, 3 C. E. Green, 451; *Heath v. Van Cott*, 9 Wis., 516; *Patton v. Kinsman*, 17 Iowa, 393,428; *Gahn v. Niemcewicz's Executors*, 11 Wend., 312; *Demarest v. Wynkoop*, 3 Johns. Ch., 129; *Hawley v. Bradford*, 9 Paige, 200; *Loomer v. Wheelwright*, 3 Sandf. Ch., 135; *Yale v. Dederer*, 18 N. Y., 276.   The mortgage, whether acknowledged or not, is in equity a sufficient appointment to charge her separate estate.   It expresses her intention to charge it.   *Yale v. Dederer*, 18 N. Y., 283; *S. C.*, 22 id., 450, 461; 68 id., 329; *Corn Exchange Ins. Co. v. Babcock*, 42 id., 613, 618.

For the respondent there was a brief signed by *Bleekman & Bloomingdale*, her attorneys, and *Cameron, Losey & Bunn*, of counsel, with oral argument by *Mr. Bunn:*

The undisputed facts are such as to raise a presumption of undue influence, and call upon the appellant to overcome this presumption by affirmative proof that there was no undue influence applied, as well as that *Mrs. Allis* knew what she was doing.   This is suggested in *Lefebvre v. Dutruit*, 51 Wis.,

326, but is not decided. No case holds that duress or undue influence of the husband on the wife may not be established by the wife's evidence alone. See *Whitbeck v. Whitbeck*, 25 Mich., 442; *Cowee v. Cornell*, 75 N. Y., 101; *Hait v. Houle*, 19 Wis., 473. The certificate of acknowledgment is only *prima facie* proof, and may be overcome by the evidence of the party, if that is reliable and satisfactory. R. S., sec. 4156. The facts testified to by *Mrs. Allis*, if admitted, are sufficient to constitute undue influence or coërcion by the husband. Story's Eq. Jur., 239, 251; *Tapley v. Tapley*, 10 Minn., 456; *Whitbeck v. Whitbeck*, 25 Mich., 442; *Eadie v. Slimmon*, 26 N. Y., 11; *Sharpe v. McPike*, 62 Mo., 300; *Jackman Will Case*, 26 Wis., 132; *Brown v. Peck*, 2 id., 278. This evidence is the more readily relied and acted on, and less positive proof required, because of the following features of the case, which, taken together, ought to set the mortgage aside even without any direct testimony showing undue influence: 1. The deed, so far as *Mrs. Allis* was concerned, was a deed of gift, no benefit in the transaction moving or running to her. While such a deed is not void, the donee should satisfy a court of chancery that the donor had a full and accurate understanding of the contract and the consequences it would produce. White & Tudor's L. C. in Eq., 1188, 1192, 1237, 1250; *Hoghton v. Hoghton*, 15 Beav., 299. 2. The confidential and fiduciary relation between husband and wife makes necessary a jealous scrutiny of all transactions between them. Where conveyances are voluntary or upon inadequate consideration, and for the benefit of the stronger party, very slight proof of undue influence is sufficient. 1 White & Tudor's L. C. in Eq., 1193, 1194, 1185, 1204, 1213, 1233; *Huguenin v. Baseley*, 2 id., 1156; *Dent v. Bennett*, 4 Myl. & Cr., 277; *Hoghton v. Hoghton, supra; Hunter v. Atkins*, 3 Myl. & K., 135; *Page v. Horne*, 11 Beav., 227; *Harvey v. Mount*, 8 id., 439; *Cobbett v. Brock*, 20 id., 524; *Smith v. Kay*, 7 H. L. C., 750; *Davies v. Davies*, 9 Jur., N. S., 1002; *Coulson v. Allison*,

2 DeG., F. & J., 521; *Phillips v. Mullings*, L. R., 7 Ch. App., 244; *Rhodes v. Bate*, 1 id., 257; *Taylor v. Taylor*, 8 How., 183; *Billage v. Southee*, 9 Hare, 540; *Wheeler v. Smith*, 9 How., 58; *Dunn v. Chambers*, 4 Barb., 381; *Sears v. Shafer*, 2 Seld., 268. 3. The improvidence of the transaction furnishes a probable and just inference of undue influence. *Harvey v. Mount*, 8 Beav., 439; *Underhill v. Horwood*, 10 Ves., 209; *Tally v. Smith*, 1 Coldw., 290; *Cruise v. Christopher*, 5 Dana, 181. 4. In judging of the existence of undue influence, the material inquiry is, Did the party have time to consider, commensurate with the importance of the act, and did he have the benefit of competent and independent advice? *Watkins v. Brant*, 46 Wis., 419; *Rhodes v. Bate*, L. R., 1 Ch. App., 256; *Russell's Appeal*, 25 P. F. Smith, 269; Story's Eq. Jur., 251; White & Tudor's L. C. in Eq., 1188. The appellant is not in the position of a *bona fide* purchaser for a valuable consideration. The mortgage was taken by him merely as additional security for a preëxisting debt, from one who gained no benefit. *Whelan v. Whelan*, 3 Cow., 537; *Gordon v. M'Carty*, 3 Whart., 407; *Russell's Appeal, supra; Maitland v. Irving*, 15 Sim., 437; *Davis v. Calvert*, 5 Gill & J., 302; Story's Eq. Jur., 256; 2 White & Tudor's L. C. in Eq., 1189–91, 1261; *Dickerson v. Tillinghast*, 4 Paige, 214; *Padgett v. Lawrence*, 10 Paige, 180; *Morse v. Godfrey*, 3 Story, 364; *Cary v. White*, 52 N. Y., 139; *Ashton's Appeal*, 23 P. F. Smith, 162; *U. S. v. Hodge*, 6 How., 279; *Paine v. Voorhees*, 26 Wis., 532. Under the statute of 1839, attestation was not necessary to make a deed valid. *McPherson v. Featherstone*, 37 Wis., 639. But the statute of 1849 made a radical change in the law, which has ever since been retained. R. S. 1858, ch. 86, sec. 8; 2 Tay. Stats., 1143, § 8; R. S., sec. 2216. Deeds executed in this state must, by that statute, be executed in the presence of two witnesses, who shall subscribe their names as such. The object of this statute is to throw additional safeguards around the conveyance of land, and it is

therefore mandatory. *State ex rel. Doerflinger v. Hilmantel*, 21 Wis., 566; *Crane v. Reeder*, 21 Mich., 61; *Galpin v. Abbott*, 6 id., 36; *French v. French*, 3 N. H., 254. Without two witnesses, the deed is void even between the parties. *Clark v. Graham*, 6 Wheat., 577; *Courcier v. Graham*, 1 Ohio, 157; *Patterson's Lessee v. Pease*, 5 id., 190; *Thompson v. Morgan*, 6 Minn., 295. The mortgage, being void for lack of signature in presence of witnesses, cannot be reformed and treated in equity as an agreement to convey. Equity will not reform the defective deed of a married woman. She must, in order to convey, follow precisely all the steps and formalities laid down by statute. Story's Eq. Jur., 1391; *Elliott v. Peirsoll*, 1 Pet., 338; *Hait v. Houle*, 19 Wis., 473. The conveyance being wholly voluntary on the part of *Mrs. Allis*, and being taken merely as security for a preëxisting debt, equity will not reform the mortgage so as to enforce it against her. *Dodge v. Hollinshead*, 6 Minn., 47; *Hanson v. Michelson*, 19 Wis., 507; *Eaton v. Eaton*, 15 id., 259; 2 L. C. in Eq., 1040. Nor is she estopped by acquiescence or delay. The acquiescence will be presumed to have been due to the causes which wrought the original transaction; and the appellant, having never paid anything valuable, or changed his position for the worse in reliance upon her signature, has not been damnified by the delay.

ORTON, J. The mortgage to be foreclosed in this case was executed by the defendants, as husband and wife, upon the homestead and separate estate of the wife, to secure a note, also signed by both, for the antecedent debt of the husband. The husband did not appear or answer, and the gravamen of the defense set up by the wife is, that she signed both the note and mortgage, induced by the coërcion and undue influence of her husband, and that she never acknowledged the mortgage. To sustain this defense the wife, *Mrs. Allis*, testified: "And then *Mr. Allis* came back and came into the kitchen with a

paper folded in his hands. He touched me on the elbow as he passed, and says he, 'I have a paper here that I want you to sign;' and I looked up at him and said, 'Go into the entry; I will be there in a minute.' I said that because we had a girl that was prying into everything, and was a great girl to tell everything, and I was dishing up the dinner, and I had not time to speak there. I went into the entry, and I says, 'What paper is it?' *Mr. Allis* answered that it was a paper he wanted I should sign, to *Smith*; that it was a paper to *Smith*. I says, 'I am not going to sign it; I do not want to sign it;' and he says, 'You will sign it;' and I said, 'I won't sign it;' and he said, 'You shall sign it, or woe be unto you;' and he raised his voice in a very angry tone, and I was afraid the boarders would hear him, and I went out and closed the door. As he came into the house he had a peculiar look in his face, and that was unusual from his general manner; and from that night through, as I saw him in the entry, he looked the same. It was a strange, peculiar, savage look, and very unusual in his family. He was a mild, pleasant man in his family; and when he spoke so roughly to me, it cut me very much. The effect was that I commenced crying and feeling very badly. Neither of the papers I signed was read over to me. I had no idea what they were. I signed them. I would not have signed them if it had not been what they said to me there. The plaintiff, *Mr. Allis* and myself were present when I signed them. *Smith* said it was a friendly act. He said he was a friend to *Mr. Allis*, and that it was a friendly act. I think he said he wanted to assist him. I never acknowledged this mortgage, nor asked anybody to witness it." This is all of the testimony bearing upon the defense, except the circumstances of the indebtedness, which were such that it is certainly very strange and unnatural that *Mrs. Allis* should know nothing about it, or the meaning and effect of the negotiation between *Smith* and her husband to secure it.

It is elementary law that to sustain such a defense against a

note and mortgage and its acknowledgment, perfectly regular and fair upon their face, the evidence must be perfectly clear, convincing and satisfactory. If authorities were necessary to sustain such a proposition, the cases in this court, cited by the learned counsel of the appellant, are abundantly sufficient. *Newton v. Holley*, 6 Wis., 592; *Fowler v. Adams*, 13 Wis., 458; *Lake v. Meacham*, 13 Wis., 355; *Harrison v. Bank*, 17 Wis., 340; *Kent v. Lasley*, 24 Wis., 654; *McClellan v. Sanford*, 26 Wis., 595; *Wells v. Ogden*, 30 Wis., 637; *Harter v. Christoph*, 32 Wis., 245; *Sable v. Maloney*, 48 Wis., 333. To say the least of it, the testimony of *Mrs. Allis* is open to much suspicion. It was her own suggestion that the interview between herself and husband in relation to the signing of these papers should be strictly private, and especially out of the presence and hearing of a certain girl, who was "prying into everything," and "a great girl to tell everything." She must have had some faint idea, at least, of the nature of the transaction which she was so anxious to conceal. It is certainly very remarkable, if not unwomanly, that she did not insist upon an answer to her question, "What paper is it?" If her natural curiosity would not have prompted her to insist upon a disclosure of the transaction, her reason would seem to have required it, in order to justify her refusal and resistance; for the papers, so far as she knew, according to her evidence, might have been entirely harmless and of no particular consequence. In the private interview in the entry, she is prompt and emphatic to answer his first request: "I am not going to sign it; I do not want to sign it,"—when she did not know what he wanted her to sign. Is it possible that she owned a separate estate, and did not know what a promissory note was? The only language imputed to the husband, from which coercion or undue influence can possibly be inferred, is, "You shall sign it, or woe be unto you." This was said in a loud and angry tone of voice, with a peculiar, strange and savage look in his face. But the wife testified, in connection with this

threat and threatening appearance, that it was "very unusual in his family," "unusual from his general manner," and that "he was a mild, pleasant man in his family." Had she any reasonable ground to fear anything harmful from such a husband, in this first exhibition of his temper, however violent his language or terrible his denunciation of woe unto her? *Mrs. Allis* testifies as to what took place in the sitting-room when she signed the papers, and as to what her husband and the plaintiff said to her there about the matter, and then says: "I would not have signed them if had not been for what *they* said to me *there.*" Here is her admission that she was not coërced into signing the papers by her husband's threats in the entry, or so unduly influenced by anything that occurred there that she would have signed them; and it is very clear, from her own testimony, even, that nothing occurred in the sitting-room, at the time the papers were signed, that supports the defense.

It is too plain for argument that the evidence in this case falls far below the above rule to sustain such a defense. But, irrespective of the insufficient and questionable character of the testimony of the wife in this case, upon the issue made by the answer, and she having testified positively that she never acknowledged the mortgage, notwithstanding the certificate of the officer to that effect, we feel called upon to say something further upon this question, so ably discussed by counsel, whether in any similar case the unsupported testimony of the wife alone is generally sufficient to sustain such a defense, and disprove the acknowledgment. Although we may think that the testimony of *Mrs. Allis* is insufficient and unsatisfactory in itself, and falls below the rule in sustaining her defense, and although the mortgage may be effectual to pass her interest in the premises without any acknowledgment, we feel called upon to say that the wife's unsupported and uncorroborated testimony alone, however direct, positive and consistent in itself, is generally insufficient to sustain such a defense.

We so hold both from reason and authority; but I shall not attempt any extended argument of the question or any special review of the authorities. Such coërcion and undue influence are generally, and are likely to be, complained of as having been used under circumstances of the strictest privacy, against which there could be no defense. To allow the testimony of the wife alone to prevail in sustaining such a defense, is really submitting the integrity of her most solemn contracts and conveyances, in many cases, to be destroyed by her own interested testimony, without the chance of contradiction, and allowing her to rescind them at her pleasure. It is hard to conceive a case where such evidence alone, against her most solemn acts of contract and conveyance, could be beyond a reasonable doubt, which is the rule in such cases (*Newton v. Holley, supra*), and we have been unable to find any such case.

Without going further in the examination of authorities, we may rest this intimation upon the recent case of the *Northwestern Life Ins. Co. v. Nelson*, decided by the supreme court of the United States, and found in the April number of the Albany Law Journal, p. 336, in which the testimony of the wife is much stronger than in this case. She testified in that case that " her husband held her in a chair and guided her hand so as to write her name to the mortgage, and that when she acknowledged it, she said nothing, her husband, by motions, telling her to keep quiet, and that the acknowledging officer falsely represented the mortgage." It was held that this evidence alone was insufficient to sustain the defense, and as to the acknowledgment the court says: " The acknowledgment of a deed can only be impeached for fraud, and the evidence of fraud must be clear and convincing." That court cites the following cases to sustain this ruling: *Shelburn v. Inchiquin*, 1 Bro. Ch., 338; *Henkle v. Royal Assur. Co.*, 1 Ves. Sr., 317; *Townshend v. Stangroom*, 6 Ves. Jr., 332; *Gillespie v. Moon*, 2 Johns. Ch., 585; *Lyman v. United Ins. Co.*,

id., 630; *Graves v. Boston Marine Ins. Co.*, 2 Cranch, 419; *Howland v. Blake*, 97 U. S., 624; *Russell v. Baptist Theo. Union*, 73 Ill., 337. In support of the proposition we may also refer to the authorities cited in the brief of the appellant's counsel. We do not hold that the testimony of the wife alone may not sustain the defense that her husband coërced or unduly influenced her to sign the mortgage, in any possible case, where the circumstances or the character and relations of the parties may be such as to render it very probable, and her clear and consistent statements, and her appearance and manner of testifying, may make the most convincing impressions of the truth of her evidence upon the court or jury. But we do wish to say that as a general rule her unsupported testimony alone ought not to be received as satisfactorily establishing such a defense, and especially to overcome the formal certificate of acknowledgment by the proper officer, unless beyond reasonable question. We do not wish to say that such testimony may *never* be sufficient in any case, but that such a convenient defense to a mortgage upon the homestead or the separate estate of the wife, to secure the husband's debt, as that her signature was procured by the coërcion or undue influence of her husband within the privacy of home, thus defeating the rights of an innocent mortgagee, ought not to be encouraged by overestimating her testimony. The chances of collusion are great and beyond the possibility of exposure; and innocent persons who have parted with their money upon the faith of securities executed in the most solemn form, are very liable to suffer from the effect of family interviews between husband and wife, very properly guarded and closed against outside knowledge or intrusion. As there can scarcely be found a reported case where such a defense has prevailed upon such questionable testimony, very few if any will be likely to occur in the future. We regret the necessity of so widely differing from the learned and usually correct judge

who tried the cause, in the estimation of the testimony; but the principle involved is of too much importance to allow the finding to stand upon such inadequate support.

*By the Court.*— The judgment of the circuit court is reversed, and the cause remanded with direction to that court to render judgment of foreclosure against both of the defendants.