Nau and another vs. Brunette.

NAU and another, Executors, Respondents, vs. BRUNETTE,. Appellant.

*March 19 — June 3, 1891.*

*(1, 2) Mortgages: Assignment: Payment: Evidence: Transactions with person since deceased. (3, 4) Foreclosure by advertisement: Notice: Clerical error: When deed not necessary. (5, 6) Deed: Fraud or mistake: Evidence: Court and jury. (7) Adverse possession.*

1. A mortgagor testified that he paid the mortgage debt to the mortgagee, who never gave him back the mortgage, and that the mortgage was assigned after the death of the mortgagee; but the record showed that the mortgagee himself assigned the mortgage and that the assignment was immediately recorded. There was nothing to show whether the payment, if made, was before or after the assignment. *Held,* that the evidence was insufficient to show an effectual payment.

2. In ejectment against the mortgagor by persons claiming under a foreclosure sale, the mortgagor was not competent to testify to a payment to the mortgagee, who had since died. R. S. sec. 4069.

3. Under a statute (R. S. 1858, ch. 154, sec. 4; R. S. 1878, sec. 3526) providing that "notice that the mortgage will be foreclosed by a sale of the mortgaged premises shall be given" in the manner therein prescribed, a notice that "by virtue of the power of sale contained" in the mortgage "the said mortgaged premises at public, for cash, to the highest bidder," etc., is *held* sufficient notwithstanding the omission of the words "will be sold."

4. Upon the foreclosure of a mortgage by advertisement, if the premises are purchased by the assignee and holder of the mortgage, no deed need be executed to him. R. S. sec. 3541.

5. Unless in an extreme case, a deed should not be reformed or defeated upon the uncorroborated testimony of the grantor that when he executed the instrument he was ignorant of its nature; and it is immaterial whether the question arises in ejectment for the land or in an action to reform the deed.

6. In ejectment against the grantor in a quitclaim deed, he testified that he could not read or write, and that when he signed the deed he supposed he was signing a lease. Another witness, who admitted that he was not on friendly terms with the grantee, testified that nearly twenty years before the trial, but after the execution of the deed, the grantee had said, in a casual conversation about the land, "Don't say anything; I got him tight." On the other hand there was much strong and convincing testimony going to show that the grantor knew the nature of the instrument when he signed it. *Held*, that the trial court properly took the question from the jury, as a verdict to the effect that the grantor signed the deed in ignorance of its real contents could not have been allowed to stand.

7. Immediately after executing a quitclaim deed, the defendant removed from the land conveyed, and the grantee went into possession. Two years later the grantee moved the defendant back into a house upon the land conveyed, but not on the land in suit, and afterwards helped him build a small house on the land in suit, into which he moved and resided, cultivating about an acre of land as a garden, and sometimes pasturing cattle on the land in suit, but doing no other acts evincing a claim of title, and holding possession by permission of the grantee. *Held*, that such possession by the defendant was not adverse to the grantee.

APPEAL from the Circuit Court for *Brown* County.

This is an action of ejectment, brought by plaintiffs to recover certain land in Brown county, being a designated portion of private claim No. 10. The defendant admits his possession of the land claimed, as charged in the complaint. The history of the title to such land, as the same appears by the records and documents introduced in evidence, so far as it affects the questions considered in the opinion, is as follows:

Nau and another vs. Brunette.

In 1857 and before, the defendant, *Augustin Brunette*, was the owner of a portion of private claim No. 10, including the land in controversy. In that year *Augustin* and wife executed to Joseph Pauquette a mortgage on the land so owned by him to secure the payment of $550 and twelve per cent. interest. In 1864 Pauquette assigned such mortgage to Cormier and Wigger, who immediately thereafter assigned the same to Joel S. Fisk. The mortgage and assignments were duly recorded. In 1866 Fisk foreclosed the mortgage by advertisement, pursuant to a power of sale contained therein, and purchased the mortgaged premises at the foreclosure sale. Fisk afterwards died testate, and the lands of which he died seised were duly partitioned to the persons entitled thereto. The land in controversy was assigned to William J. Fisk. On January 24, 1882, the latter conveyed the same land to John Brunette. In 1884 John Brunette and wife executed a mortgage on the same and other land to the plaintiffs as executors of the last will of L. Nau, deceased. This mortgage was thereafter foreclosed, and the plaintiffs became the purchasers of the mortgaged property at the foreclosure sale. March 16, 1888, the sheriff who made the sale duly conveyed the land thus sold to the plaintiffs.

April 4, 1870, *Augustin Brunette* and his wife executed to John Brunette a quitclaim deed of the land in controversy, together with other lands. *Augustin Brunette* claims that he only intended to lease the land to John for two years, and supposed that the instrument he executed, which in form is a conveyance of the land, was such lease.

On the trial, at the close of the testimony, the court directed the jury to return a verdict for plaintiffs, which they accordingly did in the form prescribed by law. Judgment was thereupon entered for plaintiffs for the recovery of the land in controversy. The case is further stated in the opinion. The defendant appeals from the judgment.

For the appellant there was a brief signed by *Ellis,
Greene & Merrill*, attorneys, and *John C. Neville* and *E. H.
Ellis*, of counsel, and the cause was argued orally by *Mr.
Ellis*. They contended, *inter alia*, that this being an action
of ejectment to try the legal title, the defendant could not
be deprived of his right to the verdict of a jury on the
question whether or not the alleged quitclaim deed was
void for fraud. The circuit judge decided the case as if it
had been a suit in equity to reform the deed on the ground
of mistake. This was a fatal error. *Campbell v. Campbell,*
57 Wis. 289–291; *Gray v. Tyler,* 40 id. 579; *Hipp v. Babin,*
19 How. 271–279; *Parker v. Winnipegiseogee Lake C. & W.
Co.* 2 Black, 545–553; *Deery v. McClintock,* 31 Wis. 195–
207; Wells, Jurisdiction, 67. If the quitclaim deed was
obtained by fraud, it was absolutely void, and the title re-
mained in all respects as though it had never been executed.
*Jackson v. Hills,* 8 Cow. 293; *Franchot v. Leach,* 5 id. 508;
*Van Valkenburgh v. Rouk,* 12 Johns. 337, 338; *Jackson v.
Perkins,* 2 Wend. 308, 317; *Crocker v. Bellangee,* 6 Wis.
668; *Osterhout v. Shoemaker,* 3 Hill, 516, 517.

For the respondents there was a brief by *Huntington &
Cady*, and oral argument by *F. C. Cady*.

The following opinion was filed April 9, 1891:

LYON, J. The plaintiffs claim title to the land in contro-
versy in this action through two distinct lines of convey-
ances: (1) They claim title thereto under the mortgage
executed by *Augustin* and wife to Pauquette; the assign-
ments thereof by Pauquette to Cormier and Wigger, and
by them to Joel S. Fisk; the foreclosure of such mortgage
by Fisk, and his purchase of the land at the foreclosure
sale; the devolution of his title upon William J. Fisk, by
the death of Joel S., the probate of his will, and the parti-
tion proceedings; the conveyance by William J. Fisk to
John Brunette; and the mortgage executed by John and

wife to plaintiffs; the foreclosure thereof; the sale of the land to plaintiffs on such foreclosure; and the conveyance thereof to them by the sheriff who made such sale. (2) They also claim title under the quitclaim deed of the land executed by *Augustin* and wife to John, April 4, 1870; the mortgage from John and wife to them; and the proceedings thereunder, as above stated.

I. The validity of the title to the land in suit, which it is claimed vested in Joel S. Fisk under the foreclosure of the Pauquette mortgage and his purchase thereof at the foreclosure sale, is denied upon two grounds. They are (1) that the mortgage debt was paid to Pauquette, and (2) that the notice of such sale is fatally defective.

1. All the testimony in support of the claim that the mortgage debt was paid to Pauquette is the following, given by *Augustin:* " In 1857 I made a mortgage on this land to Pauquette. I paid it, but he never gave me the mortgage back. He died, and they sold it to Fisk after that. I paid it with money and work, and the last payment I gave him my horse,— the last horse I had; finished up $240." The record shows that Pauquette himself assigned this mortgage to Cormier and Wigger, May 16, 1864, who assigned it to Fisk the next day, and the assignments were immediately recorded. This is a conclusive refutation of *Augustin's* statement that such assignments were made after Pauquette died. There is no testimony showing when he died, and no other testimony of his death. It does not appear when *Augustin* paid the mortgage. It is just as probable that he paid it after Pauquette assigned it as that he did so before. There is no legal presumption one way or the other. If paid after the execution and recording of the assignment, it was inoperative to defeat the mortgage in the hands of the assignee. The testimony is therefore entirely insufficient to prove an effectual payment of the mortgage debt. Besides, such testimony was incompetent.

The plaintiffs derive their title to the lands through Pauquette, who the defendant swears is dead. The alleged payment of the mortgage consisted of a series of personal transactions between defendant and Pauquette. The statute declares that *Augustin* shall not be examined as a witness to such transactions. R. S. sec. 4069.

2. The notice of sale reads as follows: "Notice is hereby given that by virtue of the power of sale contained in said mortgage, and in pursuance of the statute in such case made and provided, the said mortgaged premises at public auction, for cash, to the highest bidder, at the postoffice," etc. The statute under which the proceedings were had (R. S. 1858, ch. 154, sec. 4; R. S. 1878, sec. 3526) provides that "notice that such mortgage will be foreclosed by a sale of the mortgaged premises shall be given" in the manner therein prescribed. The alleged defect in the notice is the omission therefrom of the words "will be sold" immediately after the word "premises." The words "at public auction, for cash, to the highest bidder," convey to the mind the idea of a sale. They unmistakably imply a sale. No one could possibly be deceived or misled by the omission, or fail to learn from the notice that a process was to take place at public auction in respect to the mortgaged premises, which would transfer the property to the highest bidder, for which such bidder would be required to pay a consideration in cash, measured by his bid. Such process is a sale of the property, and can be nothing else. The observations in the opinion in *St. Croix L. & L. Co. v. Ritchie*, 73 Wis. 409, upon a similar question, are applicable here. It must be held that the omission does not affect the validity or sufficiency of the notice.

It was suggested, rather than argued, by the learned counsel for defendant, that the notice of sale is also defective, in that it does not state the mortgage "will be foreclosed by a sale," etc. This objection was overruled in

*Maxwell v. Newton*, 65 Wis. 261.   It requires no discussion. It was further suggested that no deed of the premises was executed to Fisk on such sale.   None was required to vest the title in him.   He was the assignee and holder of the mortgage.   The affidavits of the publication of notice of sale and of the circumstances of the sale (which are in evidence and unchallenged) are the equivalent of a deed when the holder of the mortgage is the purchaser.   R. S. 1858, ch. 154, sec. 20; R. S. 1878, sec. 3541.   We are thus brought to the conclusion that, at the expiration of one year from the foreclosure sale, that is, on April 21, 1867, the absolute title in fee to the land in suit vested in Joel S. Fisk.   (See secs. 11, 12, ch. 154, R. S. 1858, as amended by ch. 186, Laws of 1859, as to time of redemption.)

It is maintained that *Augustin Brunette* was in the actual and adverse possession of the land from the time Joel S. Fisk obtained title thereto, and so continued until the commencement of this action, more than twenty years afterwards.   This subject will be considered later in this opinion.   It is sufficient to say here that no such adverse possession could possibly have ripened into a title before the execution of the quitclaim deed by *Augustin* and wife to John on April 4, 1870.

II. The validity of the quitclaim deed of April 4, 1870, is challenged upon two grounds: (1) It is claimed that, when *Augustin* executed the same, he supposed it was a lease to John for two years of the land described in it; and (2) that, if it is a valid deed, *Augustin* has been in the actual, continuous, and adverse possession of the land for a sufficient length of time to defeat the deed and give him title to the land.   Much of the testimony in the case is directed to the first of these propositions.   *Augustin* testified that when he signed such deed he supposed he was signing a lease of the land for two years to John; that he had given directions for the drawing of such a lease; that he could

neither read nor write; and that he did not know until many years thereafter that the instrument he executed was a deed and not a lease. This testimony of *Augustin* is practically unsupported by any other testimony in the case. True, one Michel, a witness for defendant, testified to a conversation which he had with John Brunette in regard to the land, in the year the deed was executed or the next year, in which John said, "Don't say anything; I got him tight." We infer that this remark refers to the quitclaim deed. This witness was detailing a casual conversation which occurred nearly twenty years before, and in which he had no special interest. Besides he admitted that he is not on friendly terms with John, but is with *Augustin*. Such testimony is of very little value, and scarcely amounts to corroboration of the story of *Augustin*.

On the other hand, there is much testimony going to show that *Augustin* knew perfectly well that the instrument he executed conveyed the land to John. That of Mr. Hudd, who drew the deed and took the acknowledgments of the grantors, is very strong and convincing against the claim of *Augustin*.

The learned circuit judge held that, inasmuch as the defendant sought to defeat a deed executed by himself, the rule of several cases in this court, as stated in *Harter v. Christoph*, 32 Wis. 249, is applicable. It is there said: "It would be an extreme case which would justify the court in reforming or defeating a written instrument for a mistake therein, upon the uncorroborated testimony of a party to it, although such testimony were uncontradicted." *Kent v. Lasley*, 24 Wis. 654; *McClellan v. Sanford*, 26 Wis. 595. We think the rule is applicable to this case, which is a much stronger one for its application than are any of the cases above cited, for the testimony of *Augustin* is practically uncorroborated and is strongly contradicted. It is imma-

terial that the action is ejectment to recover the land, instead of an action in equity to reform the instrument. The result to the parties is the same in either case. It may be observed that *Kent v. Lasley*, 24 Wis. 654, was also an action of ejectment. Under all the authorities, the most clear and convincing proof is required thus to overturn and defeat a solemn written instrument, deliberately executed by the parties thereto. We agree with the circuit judge that the testimony is entirely insufficient to work such a result. Had the question been submitted to the jury, and had they found that *Augustin* executed the instrument in ignorance of its real contents, supposing it to be a lease, the verdict could not be allowed to stand. In such condition of the testimony, it is proper for the court to direct a verdict.

The facts bearing upon the claim of adverse possession are briefly these: Immediately after the execution of the deed of April 4, 1870, *Augustin* removed from the land conveyed thereby, and John went into the actual possession thereof. Two years later, as *Augustin* himself testifies, John moved him back into a house on the land thus conveyed, but not on the land in suit, and afterwards helped him build a small house on the land in suit, into which *Augustin* moved and has resided therein ever since, cultivating about an acre of land about the house for a garden, and sometimes pasturing stock on the land in suit, but doing no other acts evincing a claim of title to the land. The evidence clearly shows, in fact is practically undisputed, that his possession during all that time was by the permission and sufferance of John. Such a possession is not adverse, but must "be deemed to have been under and in subordination to the legal title." R. S. sec. 4210; *Schwallback v. C., M. & St. P. R. Co.* 69 Wis. 292; *S. C.* 73 Wis. 137.

Upon full consideration of the whole case, we are of the

opinion that the court properly directed a verdict for the plaintiffs. The judgment of the circuit court must therefore be affirmed.

*By the Court.*—Judgment affirmed.

A motion for a rehearing was denied June 3, 1891.