HOWLAND *v.* BLAKE.

A., to secure the payment of money borrowed from B., mortgaged land to the latter, who commenced proceedings in foreclosure, and obtained a decree under which he purchased the land, and received a deed therefor from the proper officer. He subsequently conveyed it to C. Eight years after the death of B., A. filed his bill against C., alleging a parol agreement whereby he was to make no defence to the foreclosure; that the equity of redemption, notwithstanding the sale and the deed made pursuant thereto, should not be thereby barred, but that B., on receiving his debt from the rents and profits of the land, should convey it to A.; that B., desiring to be repaid at an earlier date, C., at A.'s instance, paid the same, and took a deed from B. with a full knowledge of the agreement between the latter and A.; that C. agreed that, when reimbursed out of the rents and profits of the land, he would convey it to A. *Held,* 1. That, in order to make out his alleged agreement with B., the burden was upon A. to produce evidence of such weight and character as would justify a court in reforming a written instrument, which, upon the ground of mistake, did not set forth the intention of the parties thereto. 2. That such evidence not having been produced to show the alleged agreement, and A.'s continuing interest in the land, his parol agreement with C. was void, under the Statute of Frauds.

APPEAL from the Circuit Court of the United States for the Eastern District of Wisconsin.

The facts are stated in the opinion of the court.

The case was argued by *Mr. D. G. Hooker* for the appellant, and by *Mr. John T. Fish* for the appellee.

MR. JUSTICE HUNT delivered the opinion of the court.

This suit was commenced in 1873, and the claim may be stated thus: In 1857, Isaac Taylor loaned to Eugene Howland, upon a mortgage, the sum of $7,000, to enable him to complete the erection of certain buildings upon premises in the city of Racine, the entire cost of which was about $24,000, and which when completed produced an annual rent of $2,200.

Soon after the buildings were completed an agreement was made between the parties, which was carried out, that the possession of the property should be surrendered to Taylor, who should enter into possession and receive the rents, until the net proceeds thereof should pay the principal and the interest of the mortgage.

In 1861, while thus in possession, Taylor commenced a suit

to foreclose his mortgage, claiming the sum of about $7,000 as due to him.    Judgment was rendered, a sale had, and Taylor becoming the purchaser for the sum of $9,300, a deed was executed to him by the sheriff.

It is claimed that, while this foreclosure suit was in progress, it was agreed that Howland should make no defence, but allow a sale to take place; that Taylor should still hold the premises as security for the payment of the mortgage debt, and, when the rents had been sufficient for that purpose, reconvey the premises to Howland.

It is alleged that, under this agreement, Taylor purchased and remained in possession until April, 1863; that about that time he desired the payment of his money, and requested Howland to procure some other person to advance it; that Howland thereupon informed Blake and Elliott of all the facts before stated, requesting them to advance the money and take a conveyance from Taylor; that a conveyance to them from Taylor, absolute in form, was thereupon made, but upon the agreement that they would pay Taylor's debt, retain the premises until the rents thereof should reimburse them, and then would reconvey the premises to Howland; that from that time until the commencement of the present action against them they have been in possession, receiving the rents which greatly exceeded the mortgage debt, with interest, taxes, insurance, and repairs. An account and a reconveyance are demanded.

An answer on oath having been waived, Blake and Elliott, the defendants, denied all the equities of the bill, and alleged other matters in defence.    Taylor died in November, 1865.

At the hearing upon the pleadings and proofs, the bill was dismissed, upon the ground that where a mortgage had been foreclosed by action, and the equity of redemption sold by a decree of the court, and an absolute title given by the proper officer to the purchaser at such sale, evidence to show that a parol agreement was made pending the litigation, by which the interest to be obtained under the sale should remain a mortgage interest only, was incompetent.    Howland appealed to this court.

The appellees, in addition to this ground of defence, insist

that the evidence does not establish the alleged agreement, and that the complainant had no equity of redemption in the premises after the twenty-second day of May, 1860, when his interest in the same was sold by the sheriff of Racine County to Daniel P. Rhodes for $1,000, in pursuance of a decree of the Circuit Court of that county in proceedings to foreclose the lien of Wiltsie & Hetrick for materials used in erecting the buildings on the said premises.

We do not think it necessary to pass formally upon the legal position assumed by the Circuit Court, that parol evidence is not admissible to impeach a title acquired at a judicial sale, nor upon the contention that the sale to Rhodes, upon the proceeding to foreclose the lien of a material-man, terminated any alleged interest of Howland in the property.

The case may be decided upon a principle governing a class of cases of the same nature. Among them there are the following: Where a written instrument is sought to be reformed upon the ground that by mistake it does not correctly set forth the intention of the parties; or where the declaration of the mortgagor at the time he executed the mortgage, that the equity of redemption should pass to the mortgagee; or where it is insisted that a mortgagor, by a subsequent parol agreement, surrendered his rights. These and the case we are considering are governed by the same principle.

In each case the burden rests upon the moving party of overcoming the strong presumption arising from the terms of a written instrument. If the proofs are doubtful and unsatisfactory, if there is a failure to overcome this presumption by testimony entirely plain and convincing beyond reasonable controversy, the writing will be held to express correctly the intention of the parties. A judgment of the court, a deliberate deed or writing, are of too much solemnity to be brushed away by loose and inconclusive evidence. Story, Eq. Jur., sect. 152; *Kent* v. *Lasley*, 24 Wis. 654; *Harrison* v. *Juneau Bank*, 17 id. 340; *Harter* v. *Christoph*, 32 id. 246; *McClellan* v. *Sanford*, 26 id. 595.

In this case, the evidence falls far short of affording this satisfactory conviction. It is not necessary to say that the complainant's claim is not made out, or that such claim is

overthrown by the evidence of the defendants. We are all, however, of the opinion that the presumption of the deeds is not overcome by satisfactory and convincing proofs.

The testimony is voluminous and conflicting. It is enough to say that the only direct evidence of an agreement by Isaac Taylor that the foreclosure should not operate as such, but that the transaction should continue to be a mortgage, is that of R. W. Howland, a brother of the mortgagor. Throughout the whole transaction he was the person conducting the business on the part of the complainant, who was an absentee. He occupies very nearly the position of a party, and upon the unspotted testimony of a party two of the cases above cited adjudge that such a decree cannot be sustained.

Much also depends upon the value of the property in 1862; and upon this point the testimony is quite conflicting, the opinions as to its value ranging from $8,000 to $26,000. *Russell* v. *Southard*, 12 How. 139.

The warranty title given by Isaac Taylor, the party who it is alleged made the agreement, was not challenged until eight years after his death, and ten years after the sale on the foreclosure. He is proven to have been not only an upright, honest man, but skilful and astute in the transaction of his business. His one peculiarity was that of reducing to writing his most ordinary transactions, that there might be neither misunderstanding nor mistake.

Taylor took his mortgage of $7,000 in October, 1857. Soon after the buildings were completed, he entered into possession and received the rents. He did this, in pursuance of his habit, by virtue of a written authority from the mortgagor. In August, 1861, he commenced a foreclosure suit, and in June, 1862, perfected his title thereunder by a judicial sale and a sheriff's deed.

To show that he deliberately agreed that these proceedings should stand for nothing, and he be a mortgagee still, requires much more conclusive evidence than is here presented.

There is, undoubtedly, evidence produced by the complainant to sustain his claim; but, after a careful perusal of it, we are by no means satisfied that it is of the character and extent required by the principles above laid down.

The same is true of the agreement alleged to have been made by the defendants, Blake and Elliott. Its existence is denied by each of them, and it is not sufficiently proved for the purpose of this action.

This is not, however, so important. Unless the equity of redemption of Howland was kept alive by the alleged agreement with Taylor, he had no interest which could sustain a parol agreement by the defendants to buy the property for his benefit, and to convey to him when required. Such an agreement is one creating by parol a trust or interest in lands, which cannot be sustained under the Statute of Frauds. It is a naked promise by one to buy lands in his own name, pay for them with his own money, and hold them for the benefit of another. It cannot be enforced in equity, and is void. *Levy* v. *Brush*, 45 N. Y. 589; *Richardson* v. *Johnsen*, 41 Wis. 100; *Payne* v. *Patterson*, 77 Pa. St. 134; *Bander* v. *Snyder*, 5 Barb. (N. Y.) 63; *Lathrop* v. *Hoyt*, 7 id. 59; Story, Eq. Jur., sect. 1201 *a* (11th ed.).

*Decree affirmed.*