MEISWINKEL and others, Respondents, vs. THE ST. PAUL FIRE & MARINE INSURANCE COMPANY, Appellant.

*October 23 — November 5, 1889.*

*Reformation of written instrument: Evidence: Insurance against fire.*

1. A written instrument will not be reformed unless the evidence is clear and convincing beyond reasonable controversy that the correction asked expresses the understanding of both parties thereto at the time it was executed.
2. The evidence in this case (consisting of the uncorroborated testimony of the plaintiffs, which is disputed in most vital points by the defendant's agent) is *held* not to warrant the reformation of indorsements upon a policy of insurance against fire so that — instead of continuing the insurance in favor of the plaintiffs' vendee, subject to the conditions of the policy, with loss, if any, payable first to the plaintiffs as mortgagees — they should operate to give the plaintiffs, as mortgagees, absolute indemnity against loss by fire, without regard to the conditions of the policy.

| 75 | 147 |
| 86 | 326 |
| 75 | 147 |
| 97 | 142 |
| 75 | 147 |
| 108 | 56 |
| 75 | 147 |
| 113 | ¹308 |
| 75 | 147 |
| s6 LRA | 200 |
| 57 LRA | 460 |

APPEAL from the Circuit Court for *Milwaukee* County. This is an action to reform a policy of insurance against loss by fire, issued by the defendant company to the plaintiffs on a certain dwelling-house, and to recover on the reformed policy for the loss by fire of such dwelling-house. The insurance is for $2,000. The term of the policy is five years from January 23, 1886.

The policy contains a large number of conditions and requirements, and specifies many causes of forfeiture. Among

these are the following: "If the property or any portion thereof shall be sold, transferred, or incumbered, . . . or if any change takes place in the title, use, occupation, or possession, . . . this policy shall be void."

When the policy was issued, the plaintiffs were the owners of the insured dwelling-house and the farm on which it was situated. On April 27, 1886, they sold and conveyed the farm to one Lindner for $6,000, and took back a mortgage thereon executed to them by the purchaser, to secure $5,900 of the price. Afterwards, on the day the conveyance was made, the plaintiffs, Lindner, and one Hunkel, the local agent of the defendant company at Milwaukee, had an interview concerning such insurance, the result of which was that Hunkel gave the assent of the company to an assignment of the policy to Lindner. The plaintiffs assigned the same to him accordingly, and, with the consent of Lindner, an indorsement was made upon the policy to the effect that any loss under it should be payable to the plaintiffs, mortgagees, as their interest might appear. Lindner thereupon went into possession of the insured property thus purchased by him.

Early in December, 1886, the insured dwelling-house was destroyed by fire. Soon thereafter the plaintiffs delivered to the company proofs of the loss, as required by the policy, stating the assignment of the policy and other proceedings in respect thereto as above, and stating, further, that they made such proofs because Lindner had left the state and the loss was payable to them. The company refused to pay the loss, giving as reasons therefor that Lindner had placed additional insurance on the property without its consent, and that he had set the house on fire. The plaintiffs thereupon brought this action. The relief demanded is that unless the court shall be of the opinion that the policy, with the indorsements thereon as they now are, create a valid, independent insurance of plaintiffs' mortgage

interest, the indorsements of April 27, 1886, assigning the policy to Lindner, and making the loss payable to plaintiffs, be stricken out, and there be indorsed thereon instead as follows: "This policy shall be and continue an insurance of the interest of said *Meiswinkel, Winner,* and *Landwehr,* as mortgagees of said property, in the same amounts as originally written," separate from and independent of the right or interest of Lindner.

The complaint alleges that the contract of April 27, 1886, with Hunkel, defendant's agent, was that the plaintiffs should hold the policy as an independent insurance of their mortgage interest alone; that he assured them the indorsements on the policy effected that object; and that they relied upon his assurances in that behalf, and rested in the belief that they had an insurance which could not be affected by the acts of Lindner or others.

The answer of defendant denies liability on the policy as it is written, and puts in issue most of the material allegations in the complaint. The testimony given on the trial is sufficiently stated in the opinion. The court found the facts substantially as stated in the complaint, and gave judgment for the plaintiffs, reforming the indorsements on the policy as prayed, and for the amount of the policy as reformed. The defendant appeals from such judgment.

For the appellant there was a brief by *Winkler, Flanders, Smith, Bottum & Vilas,* and oral argument by *F. C. Winkler.* They argued, *inter alia,* that to justify a court of equity in relieving against an alleged mistake in a written instrument, the mistake must appear beyond a reasonable doubt, and be mutual. *Blake Opera House Co. v. Home Ins. Co.* 73 Wis. 667; *Newton v. Holley,* 6 id. 592; *Lake v. Meacham,* 13 id. 355; *Fowler v. Adams,* id. 458; *Harrison v. Juneau Bank,* 17 id. 340; *Kent v. Lasley,* 24 id. 654; *McClellan v. Sanford,* 26 id. 595; *Ledyard v. Hartford F. Ins. Co.* 24 id. 496; *Harter v. Christoph,* 32 id. 245–248;

*Jarrell v. Jarrell,* 27 W. Va. 743, 748, 750; *Mead v. West-chester F. Ins. Co.* 64 N. Y. 453; *Ford v. Joyce,* 78 id. 618; *Cox v. Woods,* 67 Cal. 317; *Bartholomew v. Mercantile M. Ins. Co.* 34 Hun, 263; *Sutherland v. Sutherland,* 69 Ill. 481, 488; *Douglas v. Grant,* 12 Bradw. 273; *Hinton v. Citizens' M. Ins. Co.* 63 Ala. 488, 493; *Howland v. Blake,* 97 U. S. 624–626; *Guernesey v. American Ins. Co.* 17 Minn. 104; *Wachendorf v. Lancaster,* 61 Iowa, 509; *Ramsey v. Smith,* 32 N. J. Eq. 28, 31; *Turner v. Shaw,* 96 Mo. 22; *Edmonds' Appeal,* 59 Pa. St. 220; *Stockbridge Iron Co. v. Hudson Iron Co.* 107 Mass. 290; 1 Story's Eq. Jur. (12th ed.), secs. 156, 157; Pomeroy on Spec. Perf. sec. 261, note 1. There must not only be this satisfactory evidence of a mistake, but the same kind of evidence must establish beyond a reasonable doubt what the contract agreed on was. *Tesson v. Atlantic Mut. Ins. Co.* 40 Mo. 33; *Petesch v. Hambach,* 48 Wis. 446.

For the respondents there was a brief by *Stark & Sutherland,* and oral argument by *G. E. Sutherland.* To the point that equity will reform a policy of insurance, whenever it appears that the insured intended to secure a protection which he has not obtained, and the insurance company knew that such was his understanding and purpose, they cited *Hearn v. Equitable S. Ins. Co.* 4 Cliff. 192; *Oliver v. Mut. Com. Ins. Co.* 2 Curtis, 277; *Maher v. Hibernia Ins. Co.* 67 N. Y. 283; *Goldsmith v. Union Mut. L. Ins. Co.* 18 Abb. N. C. 325; *Miller v. Hillsborough Mut. F. A. Asso.* 14 Atl. Rep. (N. J.), 278; *Brugger v. State I. Ins. Co.* 5 Sawy. 304; *Hay v. Star F. Ins. Co.* 77 N. Y. 235; *Home Ins. & B. Co. v. Lewis,* 48 Tex. 622; *De Peyster v. Hasbrouck,* 11 N. Y. 582; *Hill v. Millville Mut. M. & F. Ins. Co.* 39 N. J. Eq. 66; *Palmer v. Hartford F. Ins. Co.* 54 Conn. 488; *Mercantile Ins. Co. v. Jaynes,* 87 Ill. 199; *Ben Franklin Ins. Co. v. Gillett,* 54 Md. 212; *Malleable Iron Works v. Phœnix Ins. Co.* 25 Conn. 465; *Bidwell v. Astor Mut. Ins. Co.* 16 N. Y. 263; *Williams v. North German*

*Ins. Co.* 24 Fed. Rep. 625; *Spare v. Home Mut. Ins. Co.* 17 id. 568; *Bailey v. American Cent. Ins. Co.* 13 id. 250; *Fink v. Queen Ins. Co.* 24 id. 318; *Sias v. Roger Williams Ins. Co.* 8 id. 183; *Woodbury S. Bank v. Charter Oak F. & M. Ins. Co.* 31 Conn. 517; *Longhurst v. Star Ins. Co.* 19 Iowa, 365; *Hammel v. Queen Ins. Co.* 50 Wis. 243; *Knox v. Lycoming F. Ins. Co.* id. 671; *Balen v. Hanover F. Ins. Co.* 67 Mich. 179; 2 Pom. Eq. Jur. secs. 845, 849.

LYON, J.    The conveyance of the insured property by the plaintiffs to Lindner, without the consent of the defendant company, would have invalidated the policy had the company insisted upon a forfeiture. But the assignment thereof to Lindner with the consent of the company, although after the conveyance was executed, was an effectual waiver of such forfeiture by the company.    The stipulation indorsed upon the policy, making any loss payable to plaintiffs as their interest might appear, constituted them the beneficiaries of the whole amount of insurance, for their interest under their mortgage greatly exceeded the insurance.

If the contract expressed in the indorsements on the policy of April 27, 1886, is allowed to stand, the plaintiffs are entitled to all money the company is liable to pay under the policy, for no part of the mortgage debt has been paid. But in such case all the conditions, stipulations, and causes of forfeiture expressed in the policy remain intact.    If any act or omission of plaintiffs would have defeated a recovery on the policy, had the same occurred before the conveyance to Lindner, the same act or omission of Lindner since the conveyance will also defeat it.

But the contract which the plaintiffs seek to establish by a reformation of the policy, or rather of the indorsements of April 27th, is a very different one.    Such contract would practically give the plaintiffs absolute indemnity against loss of the insured property by fire.    A violation of its

terms and conditions by Lindner, without their consent, would not defeat the policy. He might convey the property away, or cover it with mortgages; he might obtain additional insurance upon it; he might use the dwelling-house for prohibited purposes, or fill it with prohibited combustibles; he might, in short, disregard every requirement of the policy inserted for the reasonable protection of the insurer, and still the plaintiffs would recover on the reformed policy.

The question we are to determine is, Which of these two widely different contracts did the parties to this action make on April 27, 1886? The writings which were then executed and accepted, which are the evidence of the contract until reformed, show the contract to have been that the company would continue the insurance in favor of Lindner, and that, if the policy should remain valid, the plaintiffs should be entitled to the insurance money in case of loss until their mortgage debt should be paid. The incidents of such a contract have already been stated.

In place of the contract thus expressed and accepted by them the plaintiffs seek to substitute another, far more favorable to themselves, by showing that they did not in fact make the contract with the agent expressed in the indorsements of April 27th, but that they made the other and more favorable contract above mentioned. They do not deny that they knew the terms and contents of such indorsements, or that they accepted them as written, and acquiesced in them for many months, and until after the insured property was burned. But they claim that the agent of the company led them to believe that the indorsements operated to give them an insurance of their mortgage interest, entirely independent of Lindner and entirely unaffected by his acts or omissions, and that they confided in his statements, while the agent was himself mistaken as to the legal effect of the indorsements, or fraudulently de-

ceived them as to their effect. The circuit court found from the testimony, substantially, that the contract actually made was as the plaintiffs claim it to have been, and that they were misled by the agent, either innocently or fraudulently, into the belief that the same was expressed in the indorsements.

Are these findings supported by the testimony? The rule of evidence in such cases is stated by the supreme court of the United States as follows: "In each case the burden rests upon the moving party of overcoming the strong presumption arising from the terms of a written instrument. If the proofs are doubtful and unsatisfactory, if there is a failure to overcome this presumption by testimony entirely plain and convincing beyond reasonable controversy, the writing will be held to express correctly the intention of the parties. A judgment of the court, a deliberate deed or writing, are of too much solemnity to be brushed away by loose and inconclusive evidence." *Howland v. Blake,* 97 U. S. 624. The rule thus laid down has been affirmed and applied several times by this court. *Harter v. Christoph,* 32 Wis. 245, and cases cited. Indeed, the rule seems to prevail in all or most of the courts in this country. (See cases cited in brief of appellant.) Some of the courts say the alleged mistake must be proved beyond a reasonable doubt, or no reformation of the deed or writing will be decreed.

It was held in *Ledyard v. Hartford F. Ins. Co.* 24 Wis. 496, and reaffirmed in *Harter v. Christoph, supra,* that a written instrument will not be reformed unless the correction asked for expresses the understanding of both parties thereto at the time it was executed. Furthermore, in *Ledyard v. Hartford F. Ins. Co.,* and again in *Kent v. Lasley,* 24 Wis. 654, it was queried whether, as a general rule, a writing should be reformed on the unsupported testimony of the party asking its reformation; and in *Harter v. Chris-*

*toph* it is said: "It would be an extreme case which would justify the court in reforming or defeating a written instrument for a mistake therein, upon the uncorroborated testimony of a party to it, although such testimony were uncontradicted."

Having thus ascertained the rules of evidence which must govern the case, brief reference will be made to the testimony. The only witnesses to the transactions of April 27th, who testified on the trial, were the three plaintiffs and the agent Hunkel. The plaintiffs severally testified, in a variety of forms, that they requested Hunkel to put the policy in a shape which would fully protect them, and he agreed to do so, and said to them, after the indorsements were made, "I have insured you, and not Mr. Lindner, and all you have to do in case of fire is to come to my office and let me know, and you get your money." This is the strongest testimony we find in the record of anything said by Hunkel which tends to support the plaintiffs' contention. The mortgage debt was to become due in six months, and the plaintiffs expected it would be then paid. They obtained an express promise from Hunkel that, when it was paid, the policy should be canceled and the unearned premium returned to them. It also appeared that Lindner said he would have nothing to do with the policy; that it belonged to the plaintiffs, and that he intended to obtain other and cheaper insurance.

We find no testimony that the plaintiffs expressly told Hunkel they desired an independent contract insuring their mortgage interest alone, which would eliminate from the policy all the numerous conditions and specifications of acts, omissions, and causes which would work a forfeiture of the contract, thus making it a contract for absolute indemnity. Neither do we find any sufficient testimony showing that Hunkel had any idea that they desired to make, or supposed they had made, such a contract.

When it is remembered that the policy covered only a little more than one third of the mortgage debt, and hence that the entire legal title thereto was in plaintiffs (*Hammel v. Queen Ins. Co.* 50 Wis. 240), Lindner might well say that it belonged to plaintiffs, and he would have nothing to do with it. Although Hunkel said he had insured the plaintiffs and not Lindner, it is unreasonable to believe he meant that he had made a contract in behalf of his company so radically different from that expressed in the writings, a contract, too, which, it was proved on the trial, he had no authority to make. The whole conversation is entirely consistent with the theory that Hunkel only meant that Lindner could not get the insurance in case of loss, but the same would be paid to the plaintiffs. He testified that is what he said. He also denied that he made the contract the plaintiffs claim he did, and testified that nothing was said about issuing a policy direct to the plaintiffs to insure their mortgage interest alone.

The agreement for the cancellation of the policy and the return of the unearned premium when the mortgage should be paid, is against the contention of the plaintiffs. The payment of the mortgage would have canceled the policy if it only covered the mortgage interest, and there was no necessity for any agreement to cancel it. Moreover, Hunkel would hardly agree to refund the unearned premium after the indemnity had ceased, when the company would have been under no legal obligation to do so.

It seems very clear to our minds that the judgment of the circuit court, reforming this written contract of insurance, violates every rule of evidence above stated. The proof is not clear and convincing beyond reasonable controversy, that the plaintiffs asked the agent of the defendant company to contract with them to insure their mortgage interest alone,— that is, for absolute indemnity against loss by fire,— which would abrogate so many conditions of the

policy inserted for the protection of the insurer. Although they may have been seeking to obtain such a contract, they said nothing to the agent which necessarily communicated that desire to him. All they said to him, and all he said in reply, is entirely consistent with the theory that the agent had no thought of so changing the contract as to insure their mortgage interest alone, or that they desired him to do so. Hence it is not sufficiently proved, within the above rule, that the reformed contract expresses the understanding of both parties. Moreover, the same was reformed on the uncorroborated testimony of the parties asking for such reformation, which testimony is disputed in most vital points by that of Hunkel.

In *Gillett v. Liverpool & L. & G. Ins. Co.* 73 Wis. 203, the plaintiff, a mortgagee of the insured property, claimed, as the plaintiffs do here, that he applied for insurance on his mortgage interest alone, but that by mistake the policy was issued to the mortgagor, loss payable to the mortgagee as his interest might appear. He did not pray a reformation of the policy in terms, but the case is discussed as though he had done so. It appeared that he applied for an insurance on the mortgaged property to secure his mortgage interest therein, without any agreement or reservation as to its form or the stipulations it should contain. He accepted the policy as issued, and retained it several months without objection. The proof was held insufficient to authorize a reformation of the policy, and the plaintiff was held estopped by his laches to deny that the writing expressed the true contract. That is fully as strong a case for reformation as the present case. A valuable note to this case, prepared by J. R. Berryman, Esq. (the state librarian), will be found in the American Law Register for April, 1889 (2d Series, vol. 28, No. 4), in which many cases are collected, some of which bear upon the principles and rules above laid down.

For the reasons above stated, we are impelled to the conclusion that the plaintiffs have failed to show themselves entitled to a reformation of the contract of insurance, and that the circuit court erred in granting them such relief.

We have considered and determined the case on the hypothesis that the agent Hunkel had authority to bind the defendant company by the contract which the plaintiffs claim he entered into with them. It should be observed that we do not decide this proposition. There are stipulations in the policy which may bring the case within the rule of *Hankins v. Rockford Ins. Co.* 70 Wis. 1. But we leave that question open. Another very valuable note by Mr. Berryman to the case last cited will be found in 27 Am. Law Reg. (N. S.) 194, in which many cases bearing on the powers of insurance agents, and the limitations thereto, are collated.

*By the Court.*— The judgment of the circuit court is reversed, and the cause will be remanded for further proceedings according to law.

