# LEVIS *vs.* KENGLA.

EQUITY; DEED OF TRUST SALES; STATUTE OF FRAUDS; LACHES.

1. In a suit in equity to set aside a sale under a deed of trust, brought fifteen years after the sale and after three important witnesses for the defence had died, complainant claimed that there were no bidders present but the defendants, the holders of the trust notes, and upon objection by him to the sale proceeding, they agreed that if he would permit a form of sale to be gone through with they would take and hold the land for the benefit of the complainant and would reconvey to him after satisfying their claim. It was *held* (1) that complainant had not established his case by a preponderance of testimony; (2) that the alleged agreement by defendants was within the Statute of Frauds and not enforceable; and (3) that complainant was barred of any relief in equity by his laches.

2. Neither poverty, illiteracy nor ignorance, nor all of them combined, will avail as an excuse for laches.

No. 533.   Submitted March 4, 1896.   Decided March 17, 1896.

HEARING on an appeal by the complainant from a decree dismissing a bill to set aside a deed of trust sale and enforce an alleged trust in regard to certain real estate.   *Affirmed.*

The COURT in its opinion stated the case as follows:

This is an appeal from a decree of the Supreme Court of the District of Columbia, dismissing a bill of complaint in equity filed for the purpose of enforcing an alleged trust in regard to real estate.

Philip Levis, the appellant, was the owner of a tract of land, containing about sixty acres, in the northwestern section of the county of Washington. Being such owner, he mortgaged the property for the sum of $2,000 by a conveyance thereof on October 29, 1875, to R. P. Dodge and Philip Darneille, by a deed of trust to secure his note for that amount payable in three years thereafter to one S. D.

Clokey, with interest at the rate of ten per centum per annum, payable semi-annually. Subsequently said mortgage and promissory note being outstanding, he mortgaged the property a second time, on May 13, 1876, by a conveyance thereof by deed of trust to Joseph Weaver, as trustee, to secure his promissory note for $300 payable to Charles R. Kengla and George M. Kengla in one year thereafter, with interest at the rate of ten per centum per annum, payable annually.

Neither the principal sum nor any instalment of interest on either note was ever paid by the maker ; and on October 29, 1877, several months after the maturity of the note for $300 and default made in its payment, the trustee, Weaver, after previous advertisement, offered the property for sale at auction under the second deed of trust, and sold the same to Charles R. Kengla and George M. Kengla, the persons secured by the deed, for the sum of $1,000, subject to the prior deed to secure the note for $2,000. This note for $2,000 seems to have come before that time into the hands of the Kenglas, and to have then been held by them. Some instalments of interest had matured upon it, and remained unpaid ; but the note itself had not become due.

In consequence of some arrangement, by which Levis was to have some time within which to redeem the property from the sale, if he could, the execution of a deed of conveyance from the trustee Weaver to the Kenglas, as purchasers of the property, was postponed for upwards of two months ; but this deed was finally executed on January 17, 1878. On the next day (January 18, 1878), Dodge and Darneille, the trustees under the first deed of trust, executed a deed of conveyance to the Kenglas, releasing the property from the operation of that trust, and reciting therein that the note for $2,000 had been produced in their presence and cancelled by direction of the Kenglas, its owners, and now also the owners of the property, and that the purposes for which the trust had been created had therefore ceased and been determined.

Both at the time of sale and for some time afterwards the appellant and the Kenglas seem to have been on friendly terms ; and the appellant was permitted to remain in possession of the property for about a year after the sale, there being some kind of a house upon it in which he resided and which seems to have been destroyed after he left it. About a year, however, after the sale, the Kenglas notified the appellant to surrender the property to them ; and he did so, and moved away, the notice to quit coinciding, as he claims, with a desirability to be nearer to his business, which was that of a butcher in the markets of Washington.

The next step taken by the appellant was the filing of the original bill in this case on March 29, 1893, more than fifteen years after the sale, and more than fourteen years after his abandoment of the property to the Kenglas on their demand, when in the meantime, in consequence of unexpected speculations in the neighborhood, it had risen enormously in value. In this bill he set up the claim, that, at the sale on October 29, 1877, there were no bidders present, or any persons interested in the purchase of the property, except the Kenglas, and that thereupon he objected to the proposed sale, which, however, he finally permitted to be made without protest from him, upon the verbal statement of the Kenglas that they only desired to obtain out of the property the amount of the incumbrances thereon, and that if said sale was permitted to be made, they (the Kenglas) would reconvey the property, or as much thereof as was left after sufficient should be sold to satisfy the indebtedness and the costs of sale. He says that, relying upon this promise, he suffered what he calls "an informal sale" of the property to be made to the Kenglas, they being the only bidders, for the sum of $1,000, as already stated, subject to the first deed of trust.

In an amended bill, filed on May 16, 1895, the statement of the transaction was slightly modified. In this amended bill the appellant says that "there being no bidders present or any person interested in the purchase of said property, the

threatened sale was objected to by the complainant and was not proceeded with until said defendants had stated to the complainant, in the presence of witnesses, that they only desired to obtain out of the property the amount of the incumbrance thereon, and that if he would permit them to go through the form of a sale the said defendants would take and hold the same for the benefit of the complainant and would reconvey the same to the complainant, or so much thereof as was left after sufficient had been sold to satisfy the defendant's claim, together with the costs of the sale; whereupon, and relying upon the promise of the said defendants that they would take and hold said property in trust for the use and benefit of the complainants, he permitted an informal sale of said property to be made to the said defendants by said trustee, Weaver; that no bids were made upon said property whatever except the one bid of said defendants of $1,000, subject to a prior trust of $2,000 resting thereon, &c."

In a still further amendment of the bill offered to be made by the complainant on November 26, 1895, but which the court below declined to allow, the appellant states his claim more strongly, as follows: "That at the time of the pretended sale in this cause he had the distinct understanding and agreement with the said defendants Kengla, that they would hold the said property for his use and benefit; that thereafter defendant, Robert Kengla, told complainant that he (the complainant) could redeem said property at any time within twenty years from the date of said pretended sale; that said defendant, Robert Kengla, at one time sent for the complainant and advised him that he (Kengla) wished to convey the complainant's interest in the said property to the complainant's wife and children; that by reason of the statements and communications of the defendants he had every reason for believing and did believe that they purposed to act in good faith with him and properly account to him for the property involved in this suit; that by reason of the communications and assurances of the defendants all suspicion that they

would not act in good faith was disarmed, and he rested upon their integrity as manifested by their statements and conduct, that they would carry out in good faith the trust which they had received for his benefit."

In this statement, also, it appears, the appellant seeks to account for his long delay of fifteen years before he instituted his suit, alleging, besides his reliance on the good faith of the Kenglas, his ignorance of the law and his poverty.

The Kenglas answered the bill and the amended bill of complaint; and in their answer they wholly denied that any such arrangement had been made as the appellant claimed, or that there was any arrangement whatever of any kind before the sale. They say, however, that after the sale the plaintiff (the appellant here) informed them that he believed that he could obtain a purchaser for the property at a greater price than that for which it had been sold to them; that they then said to him that, if he could get such a purchaser within two weeks from the day of sale, they would convey to such purchaser and give the plaintiff the benefit of the increased price; that the plaintiff endeavored to find such a purchaser, but failed, and finally came to them and informed them that he had failed; whereupon they obtained a deed for the property from the trustee, and thereafter heard nothing further from the plaintiff in regard to the sale to them.

The value of the property at the time of the sale on October 29, 1877, is stated by the appellant to be about $10,000 or $12,000, while the appellees claim that it was not worth more than $3,000 or $4,000. On account, however, of an enormous rise in values in the neighborhood, due more or less to unexpected speculations, its estimated value about the time of the filing of the bill was not less than $60,000.

Within two years after the sale already mentioned to the Kenglas, one Thomas L. Hume, the holder or owner of some adjacent property, and who desired through this tract a better outlet to the public highway than he then had, purchased about thirty acres, or about one-half of the tract, from the Kenglas for $2,756.89, dedicating a little over two

acres of the purchase to the enlargement of the highway. Of the purchase money only the sum of $356.89 was paid in cash, notes being given for the remainder, secured by a deed of trust, which, when foreclosed by sale some years later, on April 13, 1885, only realized $1,400 for the twenty-seven acres or upward.

The promissory note for $2,000 given by Levis, as already stated, was cancelled; the note for $300 seems to have been marked cancelled, and both notes remained in the possession of the Kenglas. Mr. William D. Cassin, a member of the bar, now and for many years dead, seems to have been the attorney of the latter at the time. But there was produced in evidence in the case a statement of account of the trustee's sale made by him, and in his handwriting, in which he distributes the purchase price of $1,000 as follows: $60 to the auctioneer, and cost of advertising; $50 to the trustee for commissions; $132.52 for taxes; $343.75 to the Kengla note (presumably principal and interest of the note for $300), and the balance, $413.73, " paid Levis; this balance paid on interest of first note for order of Levis," according to the words of the memorandum in the statement.

The trustee Weaver, who had made the sale, died some years before the institution of the suit; and George M. Kengla, one of the original defendants, and, according to Levis, the principal party to the transaction—for it is upon him that he finally seeks to charge the arrangement alleged to have been made with him—died between the date of the answer to the original bill, which was executed by him, and the time of the filing of the amended bill; and his two minor children, who are his heirs at law, were thereupon made parties to the suit in his place.

After replication filed and testimony taken, the main burden of which, of course, on the part of the appellant, was an attempt to support his allegation as to the agreement between himself and the Kenglas at or before the time of the sale on October 29, 1877, the cause came on for hearing, and the court below dismissed the bill and the

amended bill. The decision is understood to have been based mainly on the ground of the complainant's laches in postponing the prosecution of his alleged rights for fifteen years ; and also upon the ground that, if there was any such agreement as he pretended, it was void under the Statute of Frauds as not being in writing. The complainant has appealed from that decision to this court.

*Mr. Henry E. Davis* and *Mr. H. B. Moulton* for the appellant :

1. Under the facts of this case, the Kenglas became, by implication or construction of law, trustees *ex maleficio* for the appellant. This takes the case out of the Statute of Frauds. *Seichrist's App.,* 66 Pa. St. 237 ; *Baier* v. *Beberrich,* 6 Mo. App. 537 ; *Turner* v. *King,* 2 Ired. (N. C.) Eq. 132 ; *Mulholland* v. *York,* 82 N. C. 510 ; *Tankard* v. *Tankard,* 84 N. C. 286 ; *Smiley* v. *Pierce,* 98 N. C. 185 ; *Harris* v. *McIntyre,* 118 Ill. 275 ; *Sandfoss* v. *Jones,* 35 Cal. 481 ; *Cameron* v. *Ward,* 8 Ga. 245 ; *Robertson* v. *Robertson,* 9 Watts, 32.

2. Appellant is not barred of his remedy by laches. Length of time alone is not a test of laches. *Paschall* v. *Hinderer,* 28 Oh. St. 568 ; *Aylett's Executor* v. *King,* 11 Leigh, 486. Where the defendant's rights have not been prejudiced by the delay, the material facts in the case sufficiently established, and the controversy not embarrassed by the claims of third persons, or by conflicting interests, lapse of time constitutes no ground for refusing relief in equity, and within what time a claim for relief will be barred depends upon the peculiar circumstances of the case, and these are always open to examination. 12 Amer. and Eng. Enc. of Law, 542, *note ; Ex parte Adamson,* L. R. 8 Ch. Div. 807.

*Messrs. Gordon & Gordon,* for the appellees, cited :

1. On the question of laches, *Speidel* v. *Henrici,* 120 U. S. 387 ; *Brown* v. *Buena Vista,* 95 U. S. 161 ; *Hammond* v.

*Hopkins,* 143 U. S. 250; *Leggett* v. *Oil Co.,* 149 U. S. 294; *Naddo* v. *Bardon,* 51 Fed. R. 497; *De Estrada* v. *Water Co.,* 46 Fed. R. 280.

2. As to the application of the Statute of Frauds, *May* v. *Sloan,* 101 U. S. 237; *Parker* v. *Bodley,* 4 Bibb, 102; Brown, Stat. Frauds, sec. 80; *Dorsey* v. *Clark,* 4 H. & J. 556; *Groff* v. *Rohrer,* 35 Md. 336.

Mr. Justice MORRIS delivered the opinion of the Court:

We think the decision was entirely right in every respect. The complainant has not established his case by any such preponderance of testimony as is required by the rules of law to overthrow the title of the defendants. On the contrary, the preponderance of testimony is wholly against him. It is unreasonable to suppose that the defendants, having a good security as it stood, would have converted themselves into permanent trustees for an indefinite period for the sole and exclusive benefit of the complainant, the latter never at any time concerning himself with the payment of interest or taxes, or the care of the property in any way for fifteen years. To establish such an arrangement as this very positive and satisfactory evidence would be required; and without going into any examination of the testimony, it is sufficient for us here to say that, in our opinion, the testimony wholly fails to establish any such arrangement, or any arrangement whatever upon which a court of equity would be justified in acting. It would seem to be a conclusive answer to the complainant's pretensions that when, within a year after the sale, and when they deemed their indulgence to him to have reached its legitimate limit, they gave him notice to quit the premises, and thereby plainly intimated to him that they regarded any interest which he might have had in the premises as at an end, he submitted to the notice without protest and acquiesced in his exclusion from the property. This conduct, coupled with his utter disregard thereafter of any liability either in regard to the property or in regard to the indebtedness, is

wholly inconsistent with the existence of any such trust arrangement as that which he claims to have been made between him and the defendants.

But apart from the disclosures of the testimony and the inherent probabilities of the situation, the alleged agreement set up by the complainant as the basis of his claim, if any such agreement was ever made, could not be enforced by a court of equity in the face of the direct and positive prohibition of the Statute of Frauds; and certainly no case could well be presented more proper for the application and enforcement of that statute. Whether the alleged agreement was an agreement to reconvey in a certain contingency, as stated in the original bill, or an agreement to hold the property in trust for the use and benefit of the complainant and thereafter to reconvey, as stated in the amended bill, it was equally obnoxious to the Statute of Frauds, as an agreement relating to lands which was not reduced to writing and signed by the party to be charged therewith. *May* v. *Sloan*, 101 U. S. 237; *Howland* v. *Blake*, 97 U. S. 624. The trust sought to be raised is not the resulting trust that is expressly reserved from the operation of the statute by the terms of the statute itself. That resulting trust is one arising by implication or construction of law. The trust here alleged is an express trust created by express agreement to that effect by the parties themselves. If the statute may be avoided or evaded by designating an agreement as a trust, it is difficult to see wherein it can be enforced at all. Assuredly no better illustration of the propriety of the statute could be afforded than the present case, and no more appropriate opportunity for its application.

But even if the complainant's case were one of greater plausibility and more intrinsic justice than is evidenced by his proof, it is very plain that he would be precluded by his own laches from any relief at the hands of a court of equity. For fifteen years, without any adequate explanation, he slept upon his alleged rights. In the meantime three very important witnesses for the defence had died; one of the de-

fendants themselves had died before there was occasion to take his testimony, and the recollection of the transaction in all probability had become indistinct in the memory of the survivors. From the statement of account left by Mr. Cassin and the memorandum contained in it as to an order given by Levis, it is very evident that he might have been able to give important testimony in regard to the transaction ; and of this testimony the defendants were deprived by the complainant's laches. Moreover, part of the property was sold in the interval ; and the complainant, although he was aware of the fact, never made any inquiry in regard to it, never sought to ascertain how much had been realized from the sale, never inquired in what condition it left the account between himself and the Kenglas, all of which it would have been most natural and proper for him to do, if there had been any such arrangement as he alleges. It is true that he does not now seek relief as to this part of the property ; but this acquiescence does not relieve him from the imputation of laches in regard to his alleged interests in the past.

The complainant seeks to set up his poverty, his illiteracy and his ignorance of the law as excuses for his long delay in the prosecution of his rights. But even if the sufficiency of these excuses were more clearly shown from the testimony than they are in fact shown in the present case, it is very well settled, both upon reason and upon authority, that neither any one nor all of them combined will avail as an excuse for laches. *Leggett* v. *Standard Oil Co.*, 149 U. S. 294 ; *Hayward* v. *National Bank*, 96 U. S. 611 ; *McQuiddy* v. *Ware*, 20 Wall. 14 ; *Naddo* v. *Bardon*, 47 Fed. Rep. 788 ; *Naddo* v. *Bardon*, 51 Fed. Rep. 497, by Mr. Justice BREWER ; *De Estrada* v. *San Felipe Water Co.*, 46 Fed. Rep. 280.

The doctrine of equity by which the present case is to be governed is too well known and has been too frequently stated by the courts to require much citation of authority. But we may refer to *Hammond* v. *Hopkins*, 143 U. S. 250 ; *Speidel* v. *Henrici*, 120 U. S. 387 ; *Brown* v. *Buena Vista,*

95 U. S. 161; *Sullivan* v. *Railroad Co.*, 94 U. S. 806; *Richards* v. *Mackall*, 124 U. S. 183.

We are of opinion that, for the reasons stated, the court below was right in its decision, and that its decree should be *affirmed, with costs. And it is so ordered.*