## NORMAN v. GUNTON.

(Circuit Court, D. Montana. February 11, 1904.)

### No. 672.

1. MORTGAGES — FORECLOSURE — TRUST AGREEMENTS — ENFORCEMENT — EVIDENCE.

In a suit to enforce an alleged parol agreement by a mortgagor to hold the title of the mortgaged property, after foreclosure, subject to the mortgagor's right of redemption, after the expiration of the period allowed by law, the mortgagor testified that the agreement was made at a meeting between himself and the mortgagee alone in a certain saloon where the mortgagee stopped for several days, and that the meeting occurred about April 1, 1897. The mortgagee denied making the agreement, or that he was in the town or saloon as stated by the mortgagor during the spring of 1897, and claimed he was not in such town until the 2d day of July of that year, when he stopped at a different hotel, as was his custom. The mortgagor's evidence on cross-examination and rebuttal was somewhat contradictory, and was only corroborated by a written contract between the parties before the period of redemption had expired, by which the mortgagee agreed to pay the mortgagor a certain sum on the redemption and payment of the foreclosure judgment, costs, taxes, etc., and, if the property should not be redeemed, the agreement should be null and void. *Held* that, since it was more reasonable to infer that such contract referred to the redemption provided by law than to an agreement to extend the time for redemption, the evidence was insufficient to justify a decree enforcing such alleged parol trust.

In Equity.

Frank E. Smith and Walsh & Newman, for complainant.
Blackford & Blackford and T. J. Walsh, for defendant.

KNOWLES, District Judge. This is a suit to redeem from a sheriff's sale. The defendant, Matthew Gunton, commenced an action in one of the district courts of the state of Montana to foreclose a certain mortgage which he then held against certain real property belonging to the complainant. Said action was commenced August 21, 1897; the defendant in said action, who is the complainant herein, volun-

tarily appeared in said foreclosure suit and filed a demurrer to the complaint; it was overruled on August 28, 1897; failing or refusing to plead further, a default was taken against him and a decree of foreclosure was entered on said day for the sum of $2,369.75; the usual order of sale was issued on the 30th day of said month, and under it the property was sold on September 23, 1897, to the defendant herein, for $2,443.29, and the usual certificate of sale was given him by the sheriff, who, on August 11, 1898, made the usual deed to the purchaser therefor.

In this suit the complainant alleges that on or about April 1, 1897, the defendant herein entered into an agreement with him by which it was stipulated that the defendant was to proceed to foreclose his said mortgage, get judgment, and bid in the property named therein, and complainant would make no opposition thereto or redeem the property from the sale, but defendant would cause said property to be sold and obtain the sheriff's deed therefor, and would hold said decree of foreclosure, the sheriff's certificate of sale, when issued, and the sheriff's deed, when issued, as a security for the payment of the amount that was then actually due and owing the said defendant from your orator, together with legal interest and costs, and that, while the said sheriff's deed would purport to convey to said defendant the legal title to said property, it was in truth and in fact to be held only as a security; and it was further agreed by and between complainant and defendant that the said defendant might and would collect the rents from said premises, and that he would keep an accurate account thereof, and credit and apply the same in satisfaction of said indebtedness then due and owing to the defendant from the complainant, and that whenever the amount of said rents received and collected would be sufficient to satisfy said indebtedness, or when said indebtedness would be otherwise paid or satisfied, the said sheriff's deed should be canceled and said premises reconveyed to complainant by the defendant. The bill prays that there be an accounting as to these rents, issues, and profits, and a reconveyance of the premises described in the bill to the complainant.

In Howland v. Blake, 97 U. S. 626, 24 L. Ed. 1027, a rule as to the sufficiency of the proofs necessary to sustain a bill of this kind is expressed. That was also a case to redeem from a sheriff's sale under a foreclosure, and the court says:

"Where a written instrument is sought to be reformed upon the ground that by mistake it does not correctly set forth the intention of the parties; or where the declaration of the mortgagor, at the time he executed the mortgage, that the equity of redemption should pass to the mortgagee; or where it is insisted that a mortgagor, by a subsequent parol agreement, surrendered his rights—these and the case we are considering are governed by the same principle. In each case the burden rests upon the moving party of overcoming the strong presumption arising from the terms of a written instrument. If the proofs are doubtful and unsatisfactory, if there is a failure to overcome this presumption by testimony entirely plain and convincing beyond reasonable controversy, the writing will be held to express correctly the intention of the parties. A judgment of the court, a deliberate deed or writing, are of too much solemnity to be brushed away by loose and inconclusive evidence."

In that case R. W. Howland, a brother of the mortgagor, was the principal witness. It was said that he occupied very nearly the position

of a party, and the rule is laid down that, upon the unsupported testimony of a party, a decree such as is sought here cannot be obtained.

In the case at bar it is sought by the testimony of the complainant alone, as I hold, to sustain the alleged contract set out in the bill. He states that:

"About April 1, 1897, the defendant, Gunton, was in town [Lewistown], and I had a talk with him, and he told me that he thought some of going away—leaving Montana—and he wanted to get his business in good shape, and he said that he wasn't just satisfied over the security he had for this note, and he stated that he would like to fix it up in some way where he could feel more secure; and we talked the matter over, and he stated that my title he didn't think was just what it should be, and there was a second mortgage that he didn't feel just right over, and he suggested that he foreclose his mortgage, and it would clear up the title, and he would hold the sheriff's deed, and that if I wanted the property at any time I could have it by paying up what he was out with the costs and interest on his claim. Q. I will ask you where this conversation took place? A. I think the talk was in the—what is known as the 'Silver Dollar Saloon.' He was there some few days."

Again:

"We agreed that he should go ahead and foreclose the mortgage, and he should hold the property until such time as he received his money back, with interest; and I agreed to allow the foreclosure proceedings."

When the defendant was upon the witness stand he was asked as to this agreement, and the attorney said:

"Now, you heard this testimony here day before yesterday, did you not, and yesterday, in relation to a conversation which he (complainant) states he had with you the 1st of April, in 1897, in Lewistown; did you hear that? A. Yes, sir. Q. What have you to say about it? A. I wasn't there at all. Q. Did you ever have any conversation with him about it? A. No, sir. No, sir! Q. Well, you say you weren't here at the time? A. Wasn't in Lewistown that spring. Q. That spring? Well, when did you come to Lewistown in 1897? A. I came here on the 2d day of July, that year; fetched a Miss Glancy; she was over with me from our school."

The testimony also shows that at the time it is admitted that Gunton was in Lewistown, to wit, July 2, 1897, he did not see the complainant at all. Complainant was at that time absent from Lewistown. The witness stated that he invariably stopped, when he came to Lewistown, at the Day House, and that when he stopped there he registered there, and that he had examined the register of that hotel, and his name did not appear thereon in that year until the 2d day of July, 1897. The whole of Norman's statement as to the contract alleged to have been made about April 1, 1897, was stated to Mr. Gunton, the defendant, and he stated positively that he had never had any such conversation at any time with the complainant. Complainant was called in rebuttal, and was asked:

"Q. You heard Mr. Gunton's testimony that he didn't come into Lewistown on horseback anywhere about March or April, 1897, did you, Mr. Norman? A. Yes, sir. Q. You remember the circumstances of his visit? A. Well, I remember that he came in here. It was a stormy day—rather stormy. He had rode from Wolf creek, or been out— Told me he had been somewhere on Wolf creek, or over in that country, and that he had— I know after we had our conversation in the Silver Dollar Saloon there, I remember his remarking— He looked out of the back window of the saloon building, and he says: 'It's pretty stormy, but I've got to go; I'm in a hurry.' And to the best of my knowledge he didn't remain here very long."

On cross-examination he was asked:

"Q. Didn't you testify in this case, either on direct examination or cross-examination, that Mr. Gunton had been in town here for two or three days at the time you had your conversation with him, that you allege had taken place about the 1st of April, 1897, and that you stated took place about that time? A. Why, I don't know that I did testify to that, unless it was mixed up in questions that I didn't quite understand the exact date. I don't remember of testifying several days at that time. I possibly might have done it in the cross-examination, but I didn't— I don't remember whether I testified to that or not. Q. Didn't you claim in your testimony, at that time, that he was here two or three days, and that you talked over the matter considerably with him, or between you? A. Possibly I did. The testimony will show. I don't remember. I don't think, though, that I testified to—"

It is sought to corroborate this testimony by an agreement entered into between complainant and defendant on November 29, 1897. It is as follows:

"This is to certify, that I hereby agree to pay to W. G. Norman five hundred and six dollars and forty-four cents upon the redemption and payment of a certain judgment together with costs, taxes and insurance fees on property sold by me the 23rd day of September 1897, being lot four in block eight, Letter 'C' of the Townsite of Lewistown, Montana, and bid in by me. Should the said property not be redeemed this agreement shall be null and void."

At the time when this contract was made, the period allowed by law for the redemption of the property from the sheriff's sale of that lot had not expired, and it is more reasonable to infer that this agreement referred to the redemption provided by law for the property sold, rather than to an agreement to prolong or extend the time within which redemption was to be made beyond the time allowed by law.

A written agreement purporting to be between Gunton and his wife and said Norman, concerning the purchase of this property, was introduced in evidence. It was executed and signed by Norman only. It was sent to the defendant to be executed and signed by himself and wife. Defendant kept it in his possession, and complainant sent defendant $500 while the defendant retained the agreement in his possession. It is a contract to convey this property to Norman, and does not purport to be a contract extending the time of redemption under the hereinbefore-mentioned sheriff's sale under the mortgage foreclosure. In fact, at that time the period allowed by law for the redemption of the property had wholly expired. Some letters exchanged between these parties concerning this contract were also introduced in evidence, but none of them refers to the alleged contract of April 1, 1897. While there might be a question as to whether the defendant would not be estopped from denying the execution of this last-named contract, as he retained the same for a long time in his possession before he notified the complainant that he had not signed the same, and had received the sum of $500 from the complainant to be applied upon the same, still this suit is not based upon this contract, and it is not sought to recover thereunder, but upon the alleged verbal contract of April 1, 1897. In consideration of the rule expressed in Howland v. Blake, supra, I think the court would not be justified in finding that complainant has made out this contract clearly and satisfactorily. It is asserted on the part of the complainant, and denied positively by the defendant, and the

circumstances in the evidence to some extent corroborate the defendant. When examined in rebuttal, the plaintiff is certainly indefinite and uncertain, and does not maintain with firmness his contention when first upon the witness stand.

For these reasons I hold that the defendant is entitled to a decree dismissing the bill, and it is so ordered.