## HOLT v. QUAKER STATE OIL REFINING CO.

No. 3499.

Circuit Court of Appeals, Fourth Circuit.

Oct. 3, 1933.

Oscar L. Sapp, of Greensboro, N. C. (Armistead W. Sapp, of Greensboro, N. C., on the brief), for appellant.

J. V. Frampton, of Oil City, Pa., and Julius C. Smith, of Greensboro, N. C. (E. S. Parker, Jr., of Greensboro, N. C., Frampton & Courtney, of Oil City, Pa., and Brooks, Parker & Holderness and Smith, Wharton & Hudgins, all of Greensboro, N. C., on the brief), for appellee.

Before PARKER, NORTHCOTT, and SOPER, Circuit Judges.

NORTHCOTT, Circuit Judge.

This is an action brought in January, 1932, by appellant (hereinafter referred to as plaintiff) against appellee (hereinafter referred to as defendant), in the superior court of Guilford county, N. C. The action was removed to the District Court of the United States for the Middle District of North Carolina, and tried in January, 1933. Defendant filed a counterclaim, and at the trial, after hearing evidence on behalf of the plaintiff, the trial judge directed a verdict for the defendant in the sum of $3,735.86, upon which verdict judgment was entered for said sum, together with the costs. From this judgment this appeal was brought.

The corporation of L. H. Martin Company, Incorporated, of which L. H. Martin was president and general manager, entered into an arrangement with the defendant company to act as distributors of the products of the defendant company, a Pennsylvania corporation, in certain territory in the state of North Carolina. The Martin Company first began to handle the products of the defendant company under a contract made with the Guilford Motor Car Company in July, 1926, and on the 1st day of August, 1927, the Martin Company first entered into a written contract with the defendant with regard to the handling of the defendant's products. This contract of August 1, 1927, was for the period of one year, and under it plaintiff agreed to handle the defendant's oils and greases in

certain territory in the state of North Carolina. Again on the 1st day of August, 1928, the contract between the Martin Company and the defendant was renewed for an additional period of one year, and again on August 1, 1929, the contract was renewed. In the year 1930 there was some disagreement with regard to the renewal of the contract which had expired on August 1 of that year, and the final contract between the parties was not executed until January 15, 1931, on which date L. H. Martin, as president of the Martin Company, again signed a contract for the distribution of defendant's products. The territory in which the Martin Company was to have right of distribution was greatly restricted in the last contract.

On the 19th day of December, 1931, the defendant notified the Martin Company that it would not renew its contract. The Martin Company then brought this action alleging that the written contracts in question were procured by fraud and deceit and that by reason of such fraud and deceit the Martin Company had been damaged in the sum of $50,000. At the trial is was stipulated that the L. H. Martin Company, Incorporated, had been placed in the hands of a receiver and that Bryce R. Holt was such receiver.

The only question presented here is whether the trial judge was in error in excluding the evidence offered by appellant as incompetent because it contradicted the terms of the written contract entered into between the parties.

█ █ The general rule supported by a great weight of authorities is that fraud vitiates any contract or transaction into which it enters, and the doctrine that parol evidence is inadmissible to contradict or explain the terms of a written contract is inapplicable where the issue is whether the contract was procured by fraud.

In 56 A. L. R. p. 16, will be found a discussion of the parol evidence rule with regard to fraud together with a collection of the authorities on this point.

█ It is also a well-settled general rule that proof of fraud, in seeking to contradict a written instrument, must be clear and convincing. As was said by Mr. Justice Hunt in Howland v. Blake et al., 97 U. S. 624, 626, 24 L. Ed. 1027: "In each case the burden rests upon the moving party of overcoming the strong presumption arising from the terms of a written instrument. If the proofs are doubtful and unsatisfactory, if there is a failure to overcome this presumption by

testimony entirely plain and convincing beyond reasonable controversy, the writing will be held to express correctly the intention of the parties. A judgment of the court, a deliberate deed or writing, are of too much solemnity to be brushed away by loose and inconclusive evidence."

█ It is also held by the weight of authority that fraud must relate to a present or pre-existing fact, and cannot ordinarily be predicated on a statement as to what may happen in the future.

In 51 A. L. R. p. 49, note 7, will be found a collection of the decisions on this point.

█ An examination of the evidence introduced on behalf of the plaintiff at the trial leads us to the conclusion that there was no clear and convincing proof of fraud such as is necessary to offset the presumption arising from the terms of a written instrument. The contracts between the parties entered into as of the dates of August 1, 1928, August 1, 1929, and January 15, 1931, all contained the following provisions: "All prior agreements, negotiations, and representations, either oral or written, between seller and buyer, are expressed and contained in this contract and no such agreement, negotiation or representation prior to the date thereof shall hereafter bind either party, except the obligation, if any, of the buyer to pay the seller for Quaker State oils delivered prior to the date of this agreement."

It was alleged in plaintiff's complaint that promises were made that as long as business relations continued satisfactory the plaintiff would be allowed to continue as agent for the distribution of the defendant's products and that the fraud consisted in the failure to carry out these promises which were made without the intention of carrying them out. While it is true that defendant could put nothing into the contract that would act as a covenant of immunity against its own fraud (Arnold v. National Aniline & Chemical Co. [C. C. A.] 20 F.(2d) 364, 56 A. L. R. 4), yet these contracts were renewed from year to year without complaint on the part of the Martin Company, and no allegation of the existence of any different contract from that set out in the written agreement was made on behalf of the Martin Company until it became apparent that the business relations between the parties were not satisfactory to the defendant. Certainly the Martin Company was not vigilant in protecting its alleged rights and cannot now be heard, after various renewals of the contract, to say that a different contract existed or that fraud and

deceit were used in the procuring of the contract in the first place.

"The principle laid down in the charge of the judge, that one who claims to have been drawn into a fraudulent purchase must exercise care and vigilance to discover the fraud, and must be prompt in repudiating his contract on the ground of such fraud, is a sound one." Upton v. Tribilcock, 91 U. S. 45, 54, 23 L. Ed. 203.

It was also contended on behalf of the Martin Company that the contract of January 15, 1931, was signed under duress, Martin claiming that while he knew all the provisions of the contract, he was forced to sign because of his business condition and the fear that unless he did sign he would lose the business and be greatly damaged. In the case of Silliman v. United States, 101 U. S. 465, 470, 25 L. Ed. 987, it was held that such circumstances would not constitute duress, and the court said:

"Instead, however, of seeking the aid of the law, claimants, with a full knowledge of their legal rights, executed new charter-parties and, from time to time, received payments according to the rates prescribed therein; protesting, when the new agreements were signed, that they were executed against their wishes and under the pressure of financial necessity. They now seek the aid of the law to enforce their rights under the original charter-parties, upon the ground that those last signed were executed under such circumstances as amounted, in law, to duress. * * * They yielded to the threat or demand of the department solely because they required, or supposed they required, money for the conduct of their business or to meet their pecuniary obligations to others. Their duty, if they expected to rely upon the law for protection, was to disregard the threat of the department, and apply to the courts for redress against its repudiation of a valid contract.

"We are aware of no authority in the text-books or in the adjudged cases to justify us in holding that the last charter-parties were executed under duress. There is present no element of duress, in the legal acceptation of that word. The hardships of particular cases should not induce the courts to disregard the long-settled rules of law."

A study of the evidence offered on behalf of the plaintiff leads us to the conclusion that it does not in any sense support the charges of fraud, deceit, or duress. On the contrary, the evidence of Martin himself leads us to the conclusion that the defendant, throughout the entire course of its dealing with the Martin Company, acted in a proper way and that the differences leading up to the severance of relations between the parties were the fault of Martin alone. The defendant gained nothing by canceling the plaintiff's contract and evidently would not have done so without good reason. The fact that Martin made objections to renewing the contract and raised a dispute as to commissions and rebates, and the fact as shown by the record that the plaintiff company was in default in its payments to the defendant, show perfectly good and sufficient reason for the cancellation of the contract at the time it was cancelled. Plaintiff lost nothing by the entire transaction as shown by the record.

To hold, under the circumstances of this case, that a contract other than the one entered into in writing, and renewed from year to year, could, in the absence of clear and convincing proof of fraud, be established by oral testimony, would be to destroy the effect of all written instruments.

The evidence introduced was not sufficient to support the charges in the complaint, and the oral evidence was properly excluded by the learned trial judge.

The judgment of the court below is, accordingly, affirmed.